### R. & D. G. MILLS v. JOHN B. ASHE AND WIFE.

Where a slave is hired as an ordinary boat hand, in a trade in which it is customary to employ a pilot, on a boat which usually employs a pilot, (at the entry of a harbor,) it is a diversion from the service contemplated by the contract of hiring, to use such slave to man a yawl for sounding the bar, and if the slave be lost in such service, the hirer becomes responsible for his value; at least, where it is not shown that on the particular occasion a pilot could not be obtained, and that there was no extraordinary peril, nor negligence, nor unskillfulness on the part of the master of the boat.

The circumstance that hands employed in this trade, received higher wages, than those employed upon boats which did not go outside of the bar, is no evidence that the service in question (manning a yawl to sound the bar) was contemplated; (it being customary to take a pilot;) it is sufficiently and truly accounted for, in the greater risks necessarily incident to that trade and voyage, and is not to be referred to risks, which were unnecessary and improper.

Nor is any importance to be attached to the circumstance, that it may have been the custom of the captain of this boat, and others whose inclination led

them to do so, to sound the bar; (there being a regular pilot whose services it was customary to employ.) There was no occasion for it; and if it be the custom thus to employ slaves, hired as boat hands, upon vessels accustomed to take on board a pilot, it is a custom, which is, to say the least, unnecessary and of very questionable propriety. There can be no inference or presumption that the plaintiffs, (the owners of the slave) were aware of such a custom; and to affect them with an implied assent to it, it must have been proved that they knew of it.

A slave is a rational being, capable, in ordinary cases, at least, of taking care of himself. But he ought not to be exposed to extraordinary hazard, although incident to the service, without necessity, and without such precautions as circumstances may require, and as a man of ordinary prudence would use in exposing his own slave to the same danger.

The owners of a steamboat, who run the same for their own account, are responsible to the owner of a slave hired by them on board of such boat, for the acts of the Captain in employing such slave in a service not contemplated by the contract of hiring, or for his negligence or unskillfulness, whereby such slave is lost or injured.

Where the defendants requested the Court to charge the jury, that the owner of a steamboat, who employs a slave thereon, is only liable to the owner of the slave, in the event of his being killed, for gross negligence (on the part of the Captain of the boat,) it was held that the charge was properly refused, on the ground that it was not in accordance with the settled law of the Court.

The mere fact that a charge embraces matter not strictly applicable to the evidence, has never been held sufficient to authorize a reversal. The irrelevant matter must have a manifest tendency to distract, or divert the attention of the jury, from the true issue; and there must be cause to apprehend that they have been mislead thereby, to the prejudice of the party complaining.

Appeal from Galveston. Tried before the Hon. Nelson H. Munger.

Suit by appellees against appellants, for the value of a slave, hired by the former from the latter, as an ordinary boat hand, on board the steamboat J. H. Bell, running from Galveston to Columbia, on the Brazos river, crossing the bars at the mouths of Galveston Bay and the Brazos river; the slave having been drowned while in the employ of defendants. The contract of hiring and ownership of the slave were admitted. The defendants owned the Bell, and run her for their own account, under a captain employed by them. On the evening of De-

cember 30th, 1854, the Bell arrived at the mouth of the Brazos river on her way down ; she lay there until next morning, at which time the captain took a yawl, manned by one white man and three slaves, including the slave of the plaintiffs, and went out to sound the bar. The testimony as to the state of the bar, whether extraordinarily perilous or not, was contradictory, although it was stated by all the witnesses that it was rough. The yawl passed over the bar, and meeting a schooner coming in, in charge of the pilot, took a line, and was being towed in, when from some cause which did not clearly appear, it took a shear and capsized ; and two of the slaves, one being the slave of the plaintiffs, were drowned.

There was a regular pilot at the mouth of the Brazos river ; there was no attempt to prove that his services could not be procured ; but the defendants endeavored to prove that it was customary for vessels to cross the bar without the pilot, and for the captains to send out their yawls and sound the bar. But the weight of the testimony was, that it was customary to take the pilot ; and it was proved that the Bell made upwards of thirty trips, and took the pilot every trip but one. It was proved that the Bell gave five dollars a month more for hands than boats that did not run outside.

The value of the slave was proved. The Court charged the jury as follows :

That if a person hires a negro to a service that is dangerous and gets an extra compensation in consideration of said danger, he is not entitled to recover the value of a negro hired in such service, and lost in the usual or customary labor incident to his hiring, and without any fault or negligence of the persons in control of the hired negro, and without any unusual and extraordinary peril.

A public pilot is established by law for the bar at the mouth of the Brazos river, by whom ordinarily all the duties pertaining to piloting, sounding the bar, &c., should be performed, *prima facie ;* if the negro sued for, was employed as an ordin-

ary hand, and if the captain of the boat engaged the negro in any of said services of sounding, &c., in which service he was lost, the owners of the boat are liable for the value of said negro, unless the services in which the negro was engaged were his usual and customary employment, as contemplated in the agreement of hiring ; or that it was usual and customary for vessels of the class of the kind of the one on which the boy was hired, to cross the bar without a pilot. If the defendants have proved either of these facts, then they are not liable for the value of the negro, unless there was fault or negligence on the part of the person controlling said slave ; or he was exposed to extraordinary peril.

The plaintiffs asked several instructions, all of which were refused except the following :

That when a vessel is put in charge of a pilot, to cross a bar, the pilot has the entire charge for that purpose, and the captain of the boat could not then be considered as exercising the rights or duties of a pilot.

The defendants asked several instructions, of which the following only are deemed essential to this report :

1st. That if they believe from the evidence, that C. Fowler, captain of the steamer Bell, and the agent of defendants, transcended his authority and was guilty of acts unauthorized by law, and beyond the extent of his agency, and that by the unauthorized acts and doings of said Fowler, the life of the negro man Henry (sued for) was lost, then these defendants are not liable.

3rd. That the plaintiffs, to recover in this suit, must show the allegations in their petition to be true, and that the negro man Henry was used for other purposes than those for which he was hired.

7th. That the owner of a steamboat, who employs a slave thereon, is only liable to the owner of the slave, in the event of his being killed, for gross negligence.

The third was given :—the others refused.

Verdict and judgment in favor of the plaintiffs, for the value of the slave as proved. Motion for a new trial overruled, &c.

*D. D. Atchison* and *M. M. Potter*, for appellants, cited Mims v. Mitchell, 1 Tex. R. ; Sims v. Chance, 7 Id. 571 ; Swigert v. Graham, 7 B. Mon. 661 ; Williams v. Taylor, 4 Port. R. 234.

*Ballinger* and *Jack*, for appellees, cited McMillan v. U. Ins. Co. 1 Rice, 248 ; Keeler v. Fireman Ins. Co. 3 Hill ; Flanagan v. Washington Ins. Co. 7 Barn. 306, as to liability where there is a failure to take a pilot.

Mims v. Mitchell, 1 Tex. R. 443 ; Scudder v. Woodbridge, 1 Kelly 195 ; Gorman v. Campbell, 14 Geo. 142 ; Forsyth v. Perry, 5 Florida, 341 ; Jones v. Glass, 13 Ired. 305, as to liability of the owners for the act of the captain, and that less than ordinary care renders the hirer responsible.

Gorman v. Campbell, 14 Geo. 142 ; Spencer v. Pilcher, 8 Leigh, 565 ; Duncan v. S. C. R. R. Co., 2 Rich. 613 ; Butler v. Walker, 1 Rice, 182 ; Tollemere v. Fuller, 1 Const. R. 117 ; Forsyth v. Perry, 5 Flor. 341 ; Jay v. Wilson, 1 Cheves, 74 ; Scudder v. Woodbridge, 1 Kelly, 195 ; Miller v. Early, 8 Humph. 428 ; Mayor and Council of Columbus v. Howard, 6 Geo. 213 ; Wheelock v. Wheelright, 5 Miss. 104, as to the diversion.

WHEELER, J. In their petition the plaintiffs seek to hold the defendants responsible for the value of the slave, upon two grounds : 1st. That his loss was occasioned by a breach of the contract of hiring, in employing the slave in a different and more perilous service than that contemplated by the contract : and 2nd. That it was in consequence of the fault and negligence of the defendants, through their agent, the captain of the boat. There was a general denial : and the case was submitted to the jury upon these issues ; upon either of which,

if found for the plaintiffs, upon sufficient legal evidence, they were entitled to recover.

The principal question to be determined, is, whether the evidence was sufficient to warrant the verdict. And first, were the jury warranted by the evidence, in finding that the loss was occasioned by a diversion, unauthorized by the plaintiffs, from the service contemplated by the contract of hiring ? We are of opinion that they were. It was proved indisputably, that it was the custom for vessels, of the class of that on which the slave was employed, to take on board a pilot in crossing the bar. There was a pilot at hand, whose services might have been commanded ; in making more than thirty trips, the vessel had received his services on every occasion but one. They were ultimately accepted on this occasion.— The employment of the slave in a service, which appertained to the office of the pilot, was wholly gratuitious and unauthorized. It cannot be supposed, that it was in the contemplation of the parties to the contract of hiring, that an ordinary boat hand was to be thus employed in performing a service, which customarily and properly belonged only to the office and duty of the pilot to perform. The custom made it the duty of the master to put his vessel under the charge of the pilot, when within the usual limits of the pilot's employment. Generally, it would be the fault of the master, and the owners would be responsible for the consequences, if he did not. (McMillan v. U. Ins. Co., 1 Rice, S. C. R. 248 ; 2 Barnw. and Adolph. 380 ; 3 Kent, Com. 175-6.) The owner of a slave, hiring him upon the boat, had a right to expect that the master would do his duty in this respect, and not subject the slave to needless exposure and peril. It cannot be intended, that the contract of hiring contemplated such an employment as that of sounding the bar, when a pilot could be procured, within the limits of whose employment it was.

The circumstance that hands employed upon boats in this trade, received higher wages, than those employed upon boats

which did not go outside of the bar, is relied on as affording evidence, that the service in question was contemplated. We do not so regard it. The extra compensation is sufficiently and truly accounted for in the greater risks necessarily incident to that trade and voyage; and is not to be referred to risks, which were unnecessary and improper.

Nor is any importance to be attached to the circumstance, that it may have been the custom of the captain of this boat, and others whose inclination led them to do so, to sound the bar. There was no occasion for it; and if it be the custom thus to employ slaves, hired as boat hands, upon vessels accustomed to take on board a pilot, it is a custom, which is, to say the least, unnecessary and of very questionable propriety.— There can be no inference or presumption that the plaintiffs were aware of such a custom; and to affect them with an implied assent to it, it must have been proved that they knew of it.

Upon the evidence, we would not hesitate to say, that the service in question, was not contemplated by the contract; but whether it was or not, was fairly submitted to the decision of the jury, under the evidence and charge of the Court; and it cannot, we think, be doubted, that the evidence was sufficient to warrant them in finding that it was not; but was, on the contrary, an unauthorized diversion from, and of a more perilous character than, the service contemplated and intended by the contract. That it was the occasion of the loss of the slave there can be no question. And upon this issue alone, it would seem, the plaintiffs were well entitled to recover.

In the case of Sims et al v. Chance (7 Tex. R. 561,) this Court held, that where a bailment was for a particular purpose; as where a slave was employed to perform the service of an axe-hand in cutting timber for a steam mill, and the defendants employed him otherwise than as contemplated by the contract, or for a different purpose, in working about the mill, they were responsible for his loss by accident, while so em-

ployed, irrespective of the question whether they used due care and diligence or not. Though the Court, in that case, was not satisfied that the jury drew the correct inference from the evidence, as to the employment really contemplated by the contract; and inclined to the opinion that they did not; yet, as the testimony was conflicting, and it did not clearly appear that the verdict was wrong; as, that it was manifestly without or against evidence; it was held that it should not be disturbed. (Id. 569.) In that case, as in this, the plaintiff sought to hold the defendants liable upon the further ground of their alleged default, or negligence. The evidence upon that ground, it was thought, was not sufficient to warrant the verdict; but as it was sufficient upon the other ground, it was held that there was no error in refusing a new trial; and the judgment was affirmed.

Upon the authority of that case, we might dispense with the consideration of the remaining question; that is, whether the loss was occasioned by the want of proper and ordinary care and diligence on the part of the defendants, or their agent, acting under their authority. It may be observed, however, that repeated decisions of this Court have settled, that the hirer of a slave will, in general, be responsible to the owner, for any injury occasioned by the want of ordinary care and diligence on the part of the hirer. (Mims v. Mitchell, 1 Tex. R. 443; Sims et al v. Chance, 7 Id. 561; Mitchell v. Mims, 8 Id. 6.) In the case before cited, it was said, "The degree of " care and diligence varies according to the species of property " over which it is to be exercised; but in all cases it must be " the same which a person of ordinary prudence or discretion, " would exercise in relation to the particular thing, were it his " own property. A slave is a rational being, capable, in or- " dinary cases, at least, of taking care of himself." "But he " ought not to be exposed to extraordinary hazard, although " incident to the service, without necessity, and without such " precautions as circumstances may require, and as a man of

"ordinary prudence would use in exposing his own slave to "the same danger." (7 Tex. R. 571.) The propriety of the rule as to diligence, maintained by the decisions of this Court, might be vindicated by a reference to numerous authorities, if it were deemed necessary. But it is no longer an open question, and a reference to the decisions of other Courts is therefore unnecessary.

That there was no necessity of subjecting the slave to the hazard which occasioned his loss, in this instance, is evident. But supposing it to have been incident to the service, whether it was such an extraordinary hazard, such as a man of ordinary prudence would not have incurred in the use of his own slave, is not so clear. Upon this point the evidence was conflicting; and where that is the case the rule is well settled, that the verdict will not be disturbed. (Ib.) Whether, therefore, we suppose the jury to have found for the plaintiffs upon the one issue or the other, it must be held, that the verdict was warranted by the evidence : and, consequently, that the Court did not err in refusing a new trial.

The charge of the Court was substantially correct. It was not unfavorable to the defendants.

Considered in reference to the issues and the evidence, it is not perceived that there was error in the refusal of instructions asked by the defendants. The seventh instruction, to which our attention has been especially called, was not in accordance with the settled law of the Court. (1 Tex. R. 453 ; 7 Id. 571 ; 8 Id. 6.) It was, therefore, rightly refused.

It is objected to the charge given at the instance of the plaintiffs, that it was abstract and calculated to mislead, because the vessel was not, in fact, in charge of the pilot. It might be answered, that if the vessel was not, it ought to have been placed in charge of the pilot ; and the service in which the slave was employed by the captain was equally unnecessary, officious and unauthorized, as if he had actually engaged the services of the pilot, as he ought to have done.

But, admitting that the charge was a mere abstraction, it is not perceived that it can have misled the jury, or had any effect prejudicial to the defendants.

There was no pretence that the vessel was, at the time of the casualty, in charge of the pilot ; and it could not have been so understood by the jury. The general charge to the jury repelled the supposition that it was so considered by the Court. That the charge was correct as a legal proposition cannot admit of a doubt. If it had no application to the evidence, there is as little reason to suppose that it had any influence upon the result of the trial. There may be cases in which the giving of a charge which is correct, in point of law, will have a manifest tendency to mislead, when applied to the evidence ; but the present is not such a case. The mere fact that a charge embraces matter not strictly applicable to the evidence, has never been held sufficient to authorize a reversal. The irrelevant matter must have a manifest tendency to distract, or divert the attention of the jury from the true issue ; and there must be cause to apprehend that they have been mislead thereby, to the prejudice of the party complaining. It does not so appear in the present case. It is not every erroneous instruction, that will authorize the reversal of a judgment. On the contrary, it is the constant language of Courts, that they will not reverse on account of an erroneous instruction, which is a mere abstraction ; and cannot be supposed to have influenced the decision upon the merits. It is, in general, only when the error is in a matter which is material, that it will work a reversal of the judgment.

We conclude that there was no error of law committed upon the trial, to the prejudice of the defendants : and that the verdict was warranted by the evidence. The judgment is therefore affirmed.

　　　　　　　　　　　　　　Judgment affirmed.