TEXARKANA & FORT SMITH RAILWAY COMPANY V. HOUSTON GAS & FUEL COMPANY.

No. 5919. Decided June 9, 1932.
(51 S. W., 2d Series, 284.)

*Andrews, Streetman, Logue & Mobley, W. M. Streetman* and *Harry R. Jones,* all of Houston, for appellants.

Since the charges assessed on the involved shipment were in strict conformity with the provisions of the tariff of the Railroad Commission of Texas governing the transportation of petroleum coke, which said tariff was a general mileage scale of rates applying throughout the entire State, and not a water-compelled tariff containing water-compelled rates, and since Circulars Nos. 6005 and 6060 of the said Commission, the only orders offered herein for the purpose of justifying a lower rate, under their plain terms applied only on commodities moving on water-compelled rates, the lower court erred as a matter of law in holding that appellee had been overcharged. Houston Chamber of Com. v. Railroad Com. of Texas, 19 S. W. (2d) 583; McCoy v. Texas P. & L. Co., 239 S. W., 1105, 13 S. W. (2d) 680; Aransas Harbor Ter. Co. v. Taber, 235 S. W., 841; 13 C. J., 481; 34 C. J., 501.

Since the only instrument in writing offered herein upon which appellee's cause of action could have been based were the bills of lading covering the involved shipments, and since those bills of lading contained no provision relating in any way to a refund of overcharges, and the failure to pay the same therefore constituted no violation of any obligation thereby imposed, the lower court erred in holding that appellee's cause of action was based upon instruments in writing and that the two-year statute of limitations did not apply. Service & Wright Lumber Co. v. Sumpter Valley Ry. Co., 67 Ore., 63, 135 Pac., 539; Southwestern Alabama Ry. Co. v. W. C. Maddox & Son, 146 Ala., 539, 41 So., 9; Steusoff v. Liberty Co., 34 S. W. (2d) 643; St. Louis, Southwestern Ry. Co. v. Shields, 220 S. W., 183; Sunset Pacific Oil Co. v. Los Angeles & S. L. R. Co., 290 Pac., 434; Williamson v. Texas & P. Ry. Co., 106 Texas, 294, 166 S. W., 692; Ladd v. Southern C. P. & M. Co., 53 Texas, 172; Michigan Central R. Co. v. Partridge Lumber Co., 17 Fed. (2d)

657; Mountain Lumber Co. v. Davis, 11 Fed. (2d) 219; New v. Denison Clay Co., 260 Fed., 70; Robinson v. Varnell, 16 Texas, 382; 21 Ruling Case Law, 157.

Since appellee has not alleged that there were provisions of the bills of lading which related to a refund of overcharges, and since it has not alleged a breach by appellants of any condition or provision thereof, it has failed to state a cause of action on an instrument in writing and the lower court erred in holding that the two-year statute of limitations did not apply. Beck v. Nelson, 17 S. W. (2d) 144; Bowers v. M., K. & T. Ry. Co. of Texas, 241 S. W., 511; Burns v. American National Insurance Co., 280 S. W., 762; Texas Jurisprudence, vol. 10, p. 503.

*Fulbright, Crooker & Freeman* and *Carl G. Stearns,* all of Houston, for appellee.

The petitions each state a cause of action "for debt where the indebtedness is evidenced by or founded upon any contract in writing" within the four-year statute of limitations, and the District Court did not err in holding that appellee's suits were not barred by limitation. Sovereign Camp, Woodmen v. Piper, 222 S. W., 649, 653; Texas Jurisprudence, vol. 10, pp. 491, 492; Texas Revised Civil Statutes, 1925, Art. 2003; U. S. Fidelity & Guaranty Co. v. Rochester, 281 S. W., 306; Watson Co. v. Bleeker, 10 S. W. (2d) 394; Guaranty State Bank v. Sumner, 278 S. W., 459, 461; Houston & T. C. Ry. Co. v. Southern Architectural C. S. Co., 245 S. W., 645; Martin v. A. B. Frank Co., 125 S. W., 958.

The District Court correctly held that the commodity rate of 7c per 100 pounds prescribed by Commodity Tariff No. 4-B for shipments of coke moving from Beaumont to Galveston was by virtue of Railroad Commission Circular No. 6060 and Item No. 125-D of Texas Lines Circular No. 1-C to be observed as the maximum rate on shipments of coke transported between West Port Arthur and Houston. Texas R. C. S., 1925, Art. 6469; Hadden v. The Collector, 5 Wall., 107; United States v. Fisher, 2 Cranch (U. S.), 358; Wood Curtis Co. v. Southern Pac. Co. and Director General, 56 I. C. C., 344; Huff v. Ubey, 292 S. W., 693; Lautz Marble Corp. v. Erie Railroad Co., 115 I. C. C., 543; Lindsay Commission Co. v. Northern Pac. Ry. Co., 44 I. C. C., 759; Southern Ry. Co. v. Berthold & Jennings Lumber Co., 247 S. W., 219; State v. Linsig, 178 Ia., 484, 159 N. W., 995.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This case is before us on two certified questions from the Court of Civil Appeals for the First District at Galveston. In the interest of brevity we omit reproducing the entire certificate and content ourselves with making a short statement of the issues involved.

This suit was filed in the District Court of Harris County, Texas, by Houston Gas & Fuel Company, hereafter called appellee, against the Texarkana & Fort Smith Railway Company et al., hereafter called the railroads, to recover damages for certain alleged freight overcharges involving a number of shipments of petroleum coke, shipped by appellee from West Port Arthur, Texas, to Houston, Texas, over the lines of railroad owned and operated by these railroads. The shipments involved all occurred during the period from October 24th, 1923, to May 31st, 1926. The suit was filed more than two years after some of the shipments were made and the freight paid, but less than four years after such times.

It seems from the record that the rate actually paid was nine cents per hundred pounds and the railroads contend that this was the correct rate. The appellee contends that the correct rate was seven cents per hundred pounds, and the suit is for the difference, two cents. The shipments were made under written bills of lading issued by the railroads, and this instrument bound such carriers to transport the freight above mentioned at the lawful rate.

The case was tried in the District Court where judgment went for appellee in the sum of $5,475.76, being for a two cent overcharge. The railroads prosecuted appeal to the Court of Civil Appeals at Galveston, which court has certified to this court the following questions:

"First: Did the four rather than the two-year statute of limitations apply to the appellee's cause of action for the refund sued for?

"Second: If the four-year statute governed, which rate was the lawful one, the 9 cents collected by appellant-carriers, or the 7 cents applied by the trial court?"

### OPINION.

We shall first proceed to determine the issue of limitation. We think it is the settled law of this State that a bill of lading is a written contract. Elder Dempster & Co. v. St. Louis S.

W. Ry. Co. of Texas, 105 Texas, 628, 154 S. W., 975; Houston & T. C. Ry. Co. v. Southern A. C. Co., 112 Texas, 139, 245 S. W., 644. We think it is equally as well settled as the law of this State that a suit for overcharges for freight shipped on a written bill of lading is a suit for debt within the meaning of Section 1 of Article 5827, R. C. S., 1925. This proposition is grounded by the fact that the term "Actions for debt," which are required by the above cited Article to be commenced within four years after the cause of action shall have accrued include all suits brought to recover money for the breach of contract in writing without regard to the technical distinction between actions and suits, and debts and damages at common law. Robinson v. Varnell, 16 Texas, 302. See also authorities above cited.

In Robinson v. Varnell, supra, our Supreme Court had before it a case involving an action to recover money as damages founded on a breach of a written contract. In that case this court speaking through Judge Wheeler, went into an exhaustive discussion of the term *"debt"* as used in the Act of 1841, which required "Actions of debt grounded on any contract in writing," to be commenced within four years, and held that such term should not be given a strict literal interpretation, but on the other hand should be given such a reasonable interpretation as would give it effect according to the spirit and intention of the statute. We quote the following from this opinion:

"* * * The more reasonable construction, and that which best harmonizes with the general provisions and policy of the statute, we think is, to consider the terms 'actions of debt, grounded on any contract in writing,' as including all suits brought to recover money for the breach of a contract in writing without regard to the technical distinction between the debt and damages. The present action was brought upon a contract in writing to pay a sum certain in money, technically a debt, and an unliquidated sum for the breach of the contract to deliver specific property, technically damages. Both demands arise upon the breach of the same written contract; and it cannot have been intended in such a case, that one period of limitation should bar one part of the cause of action, and a different period another part, arising upon the same contract, merely because, in technical legal phrase, the one is called debt and the other damages. The suit, being for the recovery of money for the breach of a written contract, comes within the reason and intention of the provision prescribing the limitation of

actions for money demands arising upon written contracts; which being four years, the court did not err in holding that the right of action was not barred by the statute."

In the Elder Dempster case, supra, the Supreme Court speaking through Judge Hawkins, again reviewed the authorities bearing on the above question at great length and reaffirmed the rule announced in Robinson v. Varnell. It is true that the Elder Dempster case did not involve overcharges for the carriage of freight. It did, however, involve a suit for damages based upon a written contract in the form of a bill of lading, whereby the railroad company bound itself to transport eight bales of cotton from point of shipment to a named destination. The cotton was not delivered at destination, and the shipper's assignee sued for damages measured by the value of the cotton. It seems that the suit was filed at a time when it was barred by limitation if the two year statute applied, but was not barred by the four year statute. The Supreme Court held that the four and not the two year statute applied. We are unable to draw any distinction between a suit for damages based on a breach of the contract to deliver goods shipped by railroad, where the breach was a failure to deliver, and a suit for damages based on the breach of the same contract to transport the same goods at a lawful rate, where an unlawful rate is charged. The legal principle involved is exactly the same in the two instances.

Houston & T. C. Ry. Co. v. Southern, etc., supra, involved the exact question here under discussion. The appellee in that case sued the railroad company for overcharges for freight shipped by written bills of lading. The record shows conclusively that more than two years had elapsed between the time of the alleged overcharge and the filing of the suit, but four years had not elapsed. Under such a record the Court of Civil Appeals certified to the Supreme Court the question as to whether the claim was barred by the two year statute of limitation. The case was referred to this Section of the Commission, and the opinion, which was by the late Judge Randolph, again exhaustively reviewed the authorities and held that the four, and not the two year statute of limitation applied. The opinion in that case was expressly adopted by the Supreme Court.

It follows from what we have said that the four and not the two year statute of limitation applies to this case.

The second question involved the proper interpretation

and construction of certain rate orders promulgated by the Railroad Commission. It is shown that the rate actually collected was nine cents per hundred pounds. This rate was collected under the provisions of what was known as "Commodity Tariff No. 4-B," promulgated by the Commission, and in force at the times involved in the instant shipments. It seems that this tariff was a general mileage rate order applicable throughout the State, and if it applied to these shipments the correct rate was charged and paid.

From the above it is evident that the railroads contend that the "Tariff 4-B" governed the rate involved here, and it undoubtedly did unless some other order or rate promulgated by the Commission took these shipments out from under such tariff.

As we understand this record the appellee contends that "Tariff 4-B" did not govern the rates as to these shipments, but that they were governed by Railroad Commission Circular No. 6005 as amended by Circular No. 6060, and that such circulars had effect to promulgate a rate of seven cents per hundred pounds for these shipments instead of the nine cent rate actually collected. If these circulars applied, the lawful rate was seven cents.

In order to properly construe the above circulars and rate orders and determine their application it is proper that we refer to certain statutes and rules governing our Railroad Commission, its rules and orders. Rate making for common carriers is primarily a legislative function. Under our Constitution and statute this function has largely been delegated to the Railroad Commission. It follows that the rules and rate orders promulgated by the Commission have the same force and effect as ordinary statute laws enacted by the Legislature. This rule is too elementary to require the citation of authorities. In addition to the power to make rules and fix rates governing the transportation of freight by railroads operating as common carriers, the Commission also has the power to make such investigations as are reasonably proper and necessary to promulgate reasonable rates and make reasonable rules. It follows from this that the Commission is a quasi judiciary body. Aransas Harbor T. Ry. Co. v. Taber, 235 S. W., 841 (Com. App.). Furthermore it has been held that the interpretation officially applied by the Railroad Commission on its own orders become a part of such orders. West Texas Compress Co. v. Panhandle S. F. Ry. Co., 15 S. W. (2d) 558 (Com. App.).

It is the absolute duty of the Railroad Commission, among

other things, to fix freight rates to be charged by railroads operating as common carriers, and, as above stated, when these rates are once lawfully promulgated by the Commission they have the same force and effect as statute laws. Article 6448, R. C. S., 1925. Also under our statute the rates prescribed by the Commission are conclusive and binding on both the railroad and the shipper until found otherwise in a direct judicial action brought for the purpose of setting such rates aside. Article 6452, R. C. S., 1925. Finally, if the Railroad violates a rate prescribed by the Commission it subjects itself to a heavy penalty. Article 6473, R. C. S., 1925.

■ At this point we deem it expedient to call attention to the fact that the Texas Railroad Commission operates along entirely different lines from the Interstate Commerce Commission; in fact the difference is fundamental. Under the Federal system the railroads are commanded to fix a reasonable and non-discriminatory rate in the first instance. Under our State system the rate is not fixed in the first instance by the railroad but by the Commission. Under well known rules of construction where interstate rates are involved they' are construed strictly against the carrier. This is because the carrier promulgated the rate in the first instance. Under equally well known rules of construction the rules and rates promulgated by our State Commission are construed as ordinary statutes, the prime thing to be ascertained being the intent of the Commission.

■■ In construing statutes enacted directly by the Legislature it is the duty of the Court to look to the entire Act, including the caption, the body of the Act, and even the emergency clause, to determine the legislative intent. When the legislative intent is once determined it is the law. If such is the rule as applied to legislative acts we think the same rule should apply to the rules and rate orders promulgated by our Railroad Commission. In other words, when we come to interpret and construe the rules and rate orders of the Commission it is the intent of the Commission, fairly expressed in the rule or rate order, which should govern, and when such intent is once ascertained it should be given effect. Furthermore as above stated, where the Commission has officially interpreted its own rules and rate orders, such interpretation should be considered a part thereof. Compress Co. v. Railway Co., supra.

As above shown, the railroads charged the rates prescribed by "Tariff 4-B" promulgated by the Commission. This tariff

fixed rates for the shipments of the class here involved generally throughout the State on a mileage basis. It was the correct tariff to have applied unless Circular No. 6005 as amended by Circular No. 6060 had effect to take these shipments from under "Tariff 4-B." It seems to be admitted that "Tariff 4-B" had no reference to what is known as *"Water Compelled Rates."* It further seems to be admitted that these shipments were not entitled to move by water compelled rates. If Circular No. 6005 as amended by Circular No. 6060 had reference to water compelled rates alone then the nine cent rate as charged was correct. We are therefore left to the simple task of ascertaining whether Circular No. 6005 as amended by Circular No. 6060 covers rates other than those classed as water compelled.

■ A reading of Circular No. 6060 in its original form discloses that its style of the case or caption reads as follows:

"Hearing No. 2201. *Water Compelled Rates* between Gulf Coast points. To make non-applicable at intermediate points, also combination basis."

Under the above caption the order proceeds to recite, in substance, that in pursuance of notice and hearing it is ordered by the Commission that the following regulations have been found to be reasonable in connection with transportation service referred to, and which regulations are adopted. The circular then proceeds to prescribe certain rates and rules not necessary to set out here. The body of the order does not expressly show whether the rates prescribed are water compelled rates or not, but the caption above quoted to our minds conclusively demonstrate that only water compelled rates are dealt with in the circular. It is therefore evident that Circular No. 6005 only refers to water compelled rates and therefore has no reference to the rates applicable to the shipments here involved.

■ When we come to examine Circular No. 6060, we find that it merely amends the first section of Circular No. 6005. Its caption is merely "Amending Circular No. 6005." The order therein contained merely orders that Circular No. 6005 "be amended as follows." Then follows an order to the effect that Item 1 of Circular No. 6005 be amended in certain particulars. The latter circular contains no direct statement that it applies alone to water compelled rates, but when it is seen that it merely amends one section of a circular which deals alone with that character of rates it is evident to us that the Commission intended Circular No. 6060 to apply only to the same character

of rates that the circular of which it was made a part of applied to.

Finally if there could be any doubt on the question under discussion that doubt is fully and finally removed by the testimony of Mr. Hudnell, the rate expert for the Railroad Commission. Mr. Hudnell testified:

"The style always naturally coincides or is representative you might say of the subject matter. The style of the case is an effort always to let the style of the case specify as nearly as possible or convenient, without making it too long, the subject matter under consideration or to be considered.

We recommend that the questions certified be answered as follows:

First. The four year statute applies.

Second. The nine cent rate was the lawful rate.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.