### LAWYERS TITLE INS. CORPORATION v. BOARD OF INS. COM'RS et al.

No. 9686.

Court of Civil Appeals of Texas. Austin.

Jan. 14, 1948.

Rehearing Denied Feb. 4, 1948.

J. P. Rice, of Dallas, Black & Stayton and Charles L. Black, all of Austin, for appellant.

Price Daniel, Atty. Gen., of Texas, and W. V. Geppert and C. K. Richards, Asst. Attys. Gen., for appellees.

GRAY, Justice.

Lawyers Title Insurance Corporation, a Virginia corporation, lawfully authorized to transact the business of title insurance in Texas, brought this suit against the Board of Insurance Commissioners, the State Treasurer, and the Attorney General, seeking recovery of two sums of money,

being: the sum of $1,964.72 paid by plaintiff to the State Treasurer under protest as provided for in art. 7057b, and so paid as a part of the gross premium tax for the year 1945; and the sum of $5,887.21 paid under like protest and paid as a part of the gross premium tax for the year 1946.

The said two sums of money having been paid by plaintiff in obedience to an order of the Board of Insurance Commissioners fixing the gross premium tax due by plaintiff under art. 7064, and paid as a portion of the total sum of $2,989.02 and $9,055.20 paid for the respective years.

Plaintiff pleads the amounts of money here sued for are payments in excess of the sums it lawfully owes as gross premium taxes for the respective years, for which reason same was paid under protest and placed in the suspense fund of the State Treasurer. That the said sums of money were paid by virtue of an order of the Board of Insurance Commissioners requiring plaintiff and other title insurance companies to report and pay a gross premium tax on the gross premiums collected, including the total amounts collected by its agents inclusive of fees charged for preparation of abstracts, fees charged by attorneys for examination of title, and expenses of closing the deals.

Plaintiff alleged it conducts its business through its agents located at various points in Texas, who solicit business, issue interim title insurance pending delivery of policies of title insurance, and countersign, issue and deliver plaintiff's policies of title insurance, and designates attorneys or firms of attorneys on whose opinions or certificates of title, on forms furnished by plaintiff, its said agents are authorized to issue policies of title insurance.

Plaintiff prayed for a declaratory judgment construing the applicable statutes, art. 1302a and art. 7064, Vernon's Ann.Civ. St. arts. 1302a, 7064, and adjudging plaintiff not to be liable for the payment of a gross premium tax on the total charge for the preparation of abstracts, examination of abstracts, and charges for closing the deal, by decreeing such statutes invalid insofar as they make plaintiff liable for payment of a gross premium tax inclusive of the above named charges, and adjudging Sec. 7 of art.

1302a was repealed by art. 7064, as amended; and prayed for recovery of the sums of $1,964.72 and $5,887.21, together with legal interest, etc.

Defendants answered by special exceptions, general denial, special answers, admitting portions of plaintiff's pleading, and pleading the Board of Insurance Commissioners on June 10, 1937, promulgated an order defining the term "gross premium."

The foregoing is a substantial statement of the pleadings, and it is not deemed necessary to further set out the pleadings of the parties, since the questions here presented for determination involve the construction of the orders of the Board of Insurance Commissioners and the statutes alleged to be authority for such orders.

The trial was to the court and judgment rendered denying plaintiff recovery of the sums of money as prayed for, directing its transfer from the suspense fund as required by law, and taxing the costs against the plaintiff. In response to plaintiff's request for a declaratory judgment the court decreed as follows:

"It Is Accordingly Ordered Adjudged and Decreed that the 'gross premium' as defined by Article 7064, Revised Civil Statutes of Texas, 1925, as amended [Vernon's Ann.Civ.St. art. 7064], is the total charge for the issuance and delivery of title insurance policies received by Plaintiff, either directly or through its agents, upon property or risks located in the State of Texas, inclusive of the sums received for the cost of insurance, title examination, and closing of the deal and at the rates prescribed by the Board of Insurance Commissioners of Texas; and the 'gross premium' as defined in Section 24a, Article 1302a, Vernon's Annotated Civil Statutes, for the maintenance tax imposed thereby is the total charge for the issuance and delivery of title insurance policies received by Plaintiff, either directly or through its agents, upon property or risks located in the State of Texas, inclusive of the sums received for the cost of insurance, title examination, and closing of the deal and at the rate prescribed by the Board of Insurance Commissioners of Texas; that Article 1302a and Article 7064, Vernon's Annotated Civil Statutes, are valid and constitutional laws in so far as the taxes imposed thereby

upon the gross premiums received by Plaintiff for issuance and delivery of title insurance policies in Texas at the charges or rates prescribed by the Board of Insurance Commissioners of Texas include compensation for services rendered for and in behalf of Plaintiff by its agent abstract companies and attorneys; that Section 7 of Article 1302a, Vernon's Annotated Civil Statutes, providing that the general laws are applicable to the payment of franchise taxes by domestic corporations operating under the provisions of Article 1302a and that such domestic corporations shall not be required to pay gross premium taxes, was repealed by the enactment of Section 1, Chapter 341, Acts of the 49th Legislature, Regular Session, 1945, page 574, which amended Article 7064, Revised Civil Statutes of Texas, 1925, as amended, and that the gross premium levied thereunder, as well as the gross premium taxes levied by Section 24a, Article 1302a, Vernon's Annotated Civil Statutes, are required to be paid by both domestic and foreign title insurance companies authorized to do a title insurance business in the State of Texas under the provisions of Article 1302a, Vernon's Annotated Civil Statutes, as amended, and that there is no discrimination in favor of such domestic corporation and against foreign corporations as a matter of law in violation of Section 2 of Article VIII of the Constitution of Texas [Vernon's Ann.St.]."

The plaintiff has appealed and presents two points upon which it relies to show error of the trial court.

Point 1. The court erred in holding the gross premium tax imposed by art. 7064, as amended, shall be measured by the gross amount received by abstract companies acting as appellant's limited agents, and not upon the amount actually received by appellant for premiums for underwriting the risk covered by its title insurance policies.

Point 2. The court erred in holding the amounts collected by abstract companies for preparing abstracts, the expense of title examination by attorneys, and the expense of "closing the deal" constitute a part of the gross premiums collected and received by appellant within the meaning of art. 7064.

Appellant, in its brief, states: "The question involved is not whether appellant must pay taxes on the gross premium, but rather, what constitutes the gross premium as fixed by the appellee Board." And again in said brief states the question as follows: "The question is this: Has the Board, under the guise of fixing a gross premium included matters in the fixed gross premium that constitute no part of it; matters that are beyond the regulatory powers of the Board?"

That appellant is liable for payment of a tax on its gross premiums for the years involved in this suit is conceded; but it does not concede the Board in fixing the gross premiums, to be so taxed, has acted within its lawful authority. For determination of this issue it is necessary to examine the judicial pronouncements of the law, the statutes of this State, and the relevant orders of the Board.

██ That the Board can exercise authority conferred upon it by law, but such authority will not be conferred by implication, is firmly established by numerous decisions of the courts of this State. Board of Insurance Commissioners of Texas v. Guardian Life Ins. Co., 142 Tex. 630, 180 S.W.2d 906, and authorities there cited. And that the business of title insurance is subject to regulation by the lawful authority of the Board is likewise settled. Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 93 S.W.2d 372.

The statutes upon which the Board relies for authority to promulgate the rules and orders under consideration here are: art. 1302a and art. 7064. The portions of these Articles deemed relevant are:

Art. 1302a.

Sec. 1. Authorizes corporations to compile and own, or to acquire and own records or abstracts of title to lands and interest in lands; and to insure titles to lands or interest therein; and to make and sell abstracts of title.

Sec. 2. Authorizes the investment of capital stock of title insurance companies in abstract plants.

Sec. 3. "Corporations so formed as well as foreign corporations and those created under Subdivision 57, Article 1302 of the Revised Statutes of 1925, or under Chapter

18, Title 78, Revised Statutes of 1925, or any other law insofar as the business of either may be a title insurance business, shall operate in Texas under the control and supervision and under such uniform rules and regulations as to forms of policies and underwriting contracts and premiums therefor, as may be from time to time prescribed by the Board of Insurance Commissioners of Texas * * *."

"The Board of Insurance Commissioners shall have the right and it shall be its duty, to fix and promulgate the rates to be charged by corporations created or operating hereunder for premiums on policies or certificates and underwriting contracts. The rate fixed by the Board shall be reasonable to the public and nonconfiscatory as to the company. For the purpose of collecting data on which to determine the proper rates to be fixed, the Board shall have the right to require the companies operating in Texas to submit such information in such form as it may deem proper, all information as to loss experience, expense of operation, and other material matter for its consideration."

Sec. 21. "No commissions, rebates, discounts, or other devise shall be paid, allowed or permitted by any company, domestic or foreign, doing the business provided for in this Act, relating to title policies or underwriting contracts; provided this shall not prevent any title company from appointing as its representative in any county any person, firm or corporation owning and operating an abstract plant in such county and making such arrangements for division of premiums as may be approved by the Board of Insurance Commissioners."

Sec. 24. Makes the terms and provisions of this Act conditions upon which corporations doing the business provided for herein may continue to exist.

Sec. 24a. "To defray the expense of carrying out the provisions of Chapter 40, Acts of the Forty-First Legislature, Regular Session, 1929, Page 77, as amended (Article 1302a, Vernon's Texas Statutes), the State of Texas shall assess and collect not exceeding an additional one per cent (1%) of the gross premiums collected by every insurer on all Title Insurance premiums according to the reports made to the Board of Insurance Commissioners as required by law. * * *" And further provides for reduction of this per cent upon conditions.

Art. 7064. "Every insurance corporation, Lloyd's * * * title * * * within this State at the time of filing its annual statement, shall report to the Board of Insurance Commissioners the gross amount of premiums received upon property located in this State or on risks located in this State during the preceding year, and each of such insurance carriers shall pay an annual tax upon such gross premium receipts as follows: * * *. The gross premium receipts, as above defined, shall be reported and shown as the premium receipts in the report to the Board of Insurance Commissioners by the insurance carriers, upon the sworn statements of two (2) principal officers of such carriers. * * *

No such insurance carrier shall receive a permit to do business in this State until all such taxes are paid. * * *"

The original order of the Board, adopted at a meeting of the Board on December 6, 1929, which fixed a schedule of rates for title insurance companies, included the following: "Said schedule to include fee for insurance, service for title examination and closing deal, but no other service. (For fees for additional service, See Rule No. 4 as set out in rules and regulations promulgated by the Board relating to title insurance.)"

By amended schedule of premiums effective May 16, 1938, the above mentioned Rule No. 4 was repealed, and which amended schedule provides the premiums to be charged for policies of title insurance, beginning with a minimum, and thereafter the Board interpreted the rates of premiums to be charged as including cost of insurance, title examination, and closing of deal. Having interpreted the rule, the Board's interpretation should be considered a part thereof. Texarkana & Ft. Smith Ry. Co. v. Houston Gas & Fuel Co., 121 Tex. 594, 51 S.W.2d 284.

And further provides by "Special Hazard Rule 9. No additional charge for abstract work is permissible in connection with the issuance of title policies as set forth in paragraph first of the schedule of premiums, except where insuring company is called upon to issue policy in a county in which it does not maintain a regular office or have a regularly authorized agent; in which event the insurance company may require that it be furnished with an abstract of title, or such other information as may enable it to make a proper examination of title, and such abstract or information shall be furnished at the expense of the applicant, such expense to be in addition to the regular premium."

These orders, effective as of May 16, 1938, are the orders of the Board with which the court is now concerned. The term "gross premium" is a term which has heretofore been noticed by the Supreme Court. In Fire Ass'n of Philadelphia v. Love, 101 Tex. 376, 108 S.W. 158, 159, 810, in construing the term "gross amount of premiums received," as used in an act of the Legislature providing, "Every fire insurance company * * * at the time of filing its annual statement, shall report to the Commissioner of Insurance and Banking the gross amount of premiums received in the state, upon property located in this state, and from persons residing in this state, during the preceding year, and each of such companies shall pay an annual tax upon such gross premium receipts as follows. * * * and no insurance company shall receive a permit to do business in this state until such taxes are paid," Acts 1907, 1st Called Sess., c. 18, § 8, the court refused to permit the insurance company to deduct from its report amounts paid for reinsurance and amounts returned to policyholders, and said the tax was imposed for the privilege of doing business in this state. And said further: " * * * the basis upon which the tax is to be assessed is 'the gross premium receipts,' the whole amount received, without deduction or abatement." Also see Daniel v. Life Ins. Co., Tex.Civ.App., 102 S.W.2d 256.

This is a sufficient answer to the question as to what is or constitutes gross premiums.

We now consider the authority of the Board to enter the order under consideration here. Since the statutes under consideration are taxing statutes, it becomes the duty of the court to so construe them as to give effect to the legislative intent. Millers' Mutual Fire Ins. Co. v. City of Austin, Tex.Civ.App., 210 S.W. 825; Daniel v. Life Insurance Co., supra.

The business of insuring titles is, by law, art. 1302a, Sec. 3, placed under the control and supervision of the Board, to be exercised by such uniform rules and regulations as to policies, contracts and premiums therefor as may be prescribed by the Board. For the purpose of enabling the Board to prescribe uniform rates to be charged as premiums, it is given the right to require companies to furnish the information required, including the expense of operation. Appellant operates its business by and through its duly appointed agents, and, as is disclosed by the agency contracts on file in this cause, the agents are abstract companies; further, appellant designates attorneys or firms of attorneys, upon whose certificates of title furnished on forms provided by appellant the agents are authorized to issue and deliver policies of title insurance. Being engaged in the business of insuring titles to land, as appellant is, abstracts of title to lands, the examination of the titles and the issuance of the certificates to such titles, and the final closing of the deals are necessary steps to be taken by appellant in the safe conduct of its business, and is a reasonable way for determining whether or not to issue policies of title insurance to the applicants therefor. When these services to appellant are performed by its authorized agents and paid for by the insured, they are benefits accruing to appellant in the operation of its business and are costs of such operation, and must be included in the report of the total amount of gross premiums received.

By Sec. 21 of art. 1302a and Rule 9, supra, express provision is made for the furnishing of abstracts at the cost of applicants for title insurance in counties in which the companies have neither an office nor an authorized agent. In making this provision both the Legislature and the

Board recognized the necessity of a service over which the companies have no control as to charges, and clearly specified charges to be paid for by the applicants for title insurance in such counties. It is our opinion that the reasoning force of this section and this rule supports our conclusion as above announced.

The Board, acting under authority of art. 1302a, Sec. 3, supra, has promulgated the rates to be charged for premiums on policies of insurance, and has included in such rates charges made by the title companies or their agents as a part of the business of issuing title insurance policies. The Board had the power to fix rates of premiums to be charged by title insurance companies, did fix such rates, and having done so, a tax on the gross premiums as fixed by the Board is due. We are not here concerned with the reasonableness of the rates fixed or the propriety of the method by which the Board arrived at the rates. Those are matters to be questioned only in the manner prescribed in Sec. 3 of art. 1302a. Daniel v. Tyrrell & Garth Inv. Co., supra. The suit here is for recovery of money paid under protest as provided in art. 7057b. If the contention is made that the orders of the Board here complained of are void on their face, we overrule the contention.

The judgment of the trial court is affirmed.

Affirmed.