**RAILROAD COMMISSION OF TEXAS et al., Appellants,**

v.

**LONE STAR GAS COMPANY, Appellee.**

**No. B–8126.**

Supreme Court of Texas.

July 18, 1979.

Rehearing Denied Oct. 3, 1979.

Kelly, Hart & Hallman, Fort Worth, Robert C. Grable, Austin, Mark White, Atty. Gen., Ralph T. Aldave, Asst. Atty. Gen., Austin, for appellants.

Scott & Douglass, Frank R. Douglass, Austin, for appellee.

DENTON, Justice.

The question presented in this direct appeal is whether the applicable field rules allow a producer to recover his undisputed share of gas from a tract which has not been depleted of native gas entitlements, by use of an existing well bore located on another tract which has been depleted of all native gas entitlements.

E. Herbert Gatlin, one of the appellants here, applied to the Railroad Commission, the other appellant here, for an order authorizing the use of an existing well bore to produce a specific quantity of gas from the Bacon Lime Reservoir located in Henderson County. The Commission granted Gatlin's application. Lone Star Gas Company, appellee here, appealed this order to the district court of Travis County. The trial court set aside the Commission's order and enjoined its enforcement. Since we agree with the Commission's order granting Gatlin's application, we reverse the judgment of the trial court and remand the cause to that court with instructions to render judgment in accordance with this opinion.

A clear understanding of the legal issues involved in this appeal requires a brief summary of the unusual factual background of this controversy. In 1956, the Railroad Commission approved the Tri-Cities (Bacon Lime) field as a gas storage reservoir to be operated by Lone Star. Lone Star acquired storage rights to tracts overlying what it thought to be the entire Bacon Lime Reservoir and began operating the storage unit. Several years later, Lone Star discovered that the reservoir extended beyond the area of the gas storage unit and that J. W. Murchison had completed a well into the reservoir from a tract located outside the storage unit.

After an unsuccessful protest to the Railroad Commission, Lone Star filed suit against Murchison alleging a conversion of Lone Star's gas. The trial court sustained a special exception to the petition on the ground that it failed to state a cause of action. The court of civil appeals reversed the judgment of the trial court and remanded the cause for trial. The court of civil appeals held that natural gas becomes personal property when produced and title is not lost when the gas is injected into an underground reservoir for storage purposes. *Lone Star Gas Co. v. Murchison*, 353 S.W.2d 870 (Tex.Civ.App.—Dallas, 1962, writ ref'd n. r. e.); *see Humble Oil and Refining Co. v. West*, 508 S.W.2d 812 (Tex.1974).

After the *Murchison* decision, Lone Star applied to the Railroad Commission for an amendment to the rules governing the Bacon Lime reservoir in order to protect the

interests of all mineral owners. Lone Star proposed that no operator be allowed to produce more than the recoverable native gas originally in place under each tract of land. It also proposed 640 acre proration units with no acreage in a unit more than 6000 feet from the well bore. Lone Star urged this amendment in order to prevent physical waste, prevent the unlawful taking of stored gas and protect correlative rights in the field. As a result of Lone Star's application, the Railroad Commission adopted a new rule for the Tri-Cities (Bacon Lime) field in 1964. This new rule, Rule 8, provides in pertinent part:

RULE 8: (a) No well completed in the Tri-Cities Bacon Lime Gas Storage Reservoir shall be permitted to produce any quantity of gas in excess of the amount of recoverable native gas originally in place in the Bacon Lime Formation underlying the acreage assigned to such well; provided, however, that not more than six hundred forty (640) continuous and contiguous productive acres shall be assigned to any well completed in the Bacon Lime Gas Storage Reservoir. No acreage assigned to a well shall be more than six thousand feet (6,000') from such well and certified plats showing acreage assigned to each well shall be filed with the Commission, and if the acreage assigned to any well has been pooled, the operator shall furnish the Commission with such proof as it may require as evidence that interests in the assigned acreage have been pooled.

.     .     .     .     .

(c) For the purpose of this rule, acreage assigned to each well shall be deemed to be underlain at original conditions with an amount of gas which would fill the total Bacon-Lime Reservoir under such acreage assigned to the well with native gas at original conditions. It is also provided that the Bacon Lime Gas Storage Reservoir is hereby defined to be any area which is in communication with any well presently classified in the Bacon Lime Storage Unit.

To implement Rule 8, the Commission held productive acreage hearings to determine the native gas entitlements for each of the tracts lying outside Lone Star's storage unit. The Commission determined that Tract 7, the tract in controversy here, had 45 productive acres containing 219 acre feet of reservoir. The Commission also adopted a recovery factor of 1,111 MCF per acre-foot, resulting in an entitlement of 243,309 MCF of native gas for Tract 7.

In 1967, the Commission approved a 399.-92 acre unit around Murchison's Holloway No. 1 well, which produced until December, 1976. At that time, the Commission ordered the well shut in because it had produced all the native gas permitted under the entitlements determined by the Commission in the 1964 hearing.

W. R. Kinabrew, owner of Tract 7, then purchased Murchison's Holloway No. 1 well and the remaining mineral interests in the field previously assigned to the unit surrounding the well. Gatlin, as operator for Kinabrew, proposed the creation of a new 119-acre unit which included Tract 7 and two other tracts previously assigned to the Holloway No. 1 well. One of the other tracts is the tract on which the Holloway No. 1 well bore is located. The third tract, the middle tract, lies between and adjoins Tract 7 and the Holloway No. 1 tract. Although Tract 7 is connected to the Holloway No. 1 tract by the middle tract in the proposed unit, Tract 7 does not touch on any part of the Holloway No. 1 tract. All parties of Tract 7 are within 6,000 feet of the Holloway No. 1 well bore.

In 1977, the Railroad Commission approved the proposed 119 acre unit and authorized Gatlin to use the Holloway No. 1 well bore to produce 243,309 MCF of native gas attributable to Tract 7. The Commission adopted the following Findings of Fact and Conclusions of Law made by the examiners:

## FINDINGS OF FACT

.     .     .     .     .

1.  That the former Murchison No. 1 Holloway Unit containing 399.92 acres

was ordered shut in after producing all recoverable gas beneath such unit.

2. That all of the E. Herbert Gatlin No. 1 Holloway Unit containing 119 acres is located within 3500′ of the No. 1 Holloway well, and thus complies with provisions of Rule 8.

3. That all of Tract 7 is located within the zero isopach of the Bacon Lime reservoir.

4. That Tract 7 has never been assigned to any previous well or unit.

5. That Tract 7 has been credited with 219 acre feet of Bacon Lime containing 1111 MCF recoverable gas per acre foot.

6. That the operator of Tract 7 is entitled to recover gas from beneath such tract in accordance with Rule 8 of the rules adopted to govern the underground gas storage operations in the Tri-Cities (Bacon Lime) Field.

7. That the recoverable gas beneath Tract 7 can be produced through the existing No. 1 Holloway Unit well without the necessity of drilling an additional well on Tract 7.

8. That additional oil can be recovered from the No. 1 Holloway Unit well which is shut in at present.

9. That the Bacon Lime reservoir located outside the Lone Star—Tri-Cities Gas Storage Unit contained approximately 11.5 BCF recoverable gas and that approximately 8.2 BCF of such gas has been produced.

## CONCLUSIONS OF LAW

. . . . .

1. That the requested approval to produce Bacon Lime gas from beneath Tract 7 through the E. Herbert Gatlin No. 1 Holloway Unit well is a conservation measure properly within Commission jurisdiction.

2. That approval of the use of the existing well bore will not cause waste, but will give the various interest owners a reasonable opportunity to recover the hydrocarbons to which they are entitled, thus protecting correlative rights.

Lone Star appealed the Commission's order to the trial court. The trial court judgment recites that the Commission's order "is in all things void and is hereby reversed." Lone Star's prayer for permanent injunction against the enforcement of the order was granted. Gatlin and the Commission bring this direct appeal from the trial court judgment to this Court. It is undisputed that Gatlin is entitled to produce the native gas attributable to Tract 7 under the 1964 productive acreage hearings before the Commission. The only dispute concerns the method by which Gatlin can produce the gas.

■ As a threshold issue, we must determine what field rules govern the disposition of this case. Lone Star argues that the field rules governing *oil* wells in the Tri-Cities field (Special Order No. 5–11,718), as opposed to the rules governing gas wells in the Tri-Cities (Bacon Lime) field (Special Order No. 5–33,231), should apply. Lone Star reasons that the Holloway No. 1 well is a statutory oil well because of the high ratio of oil to gas produced from the well. *See* Tex. Natural Resources Code § 86.-002(6). They conclude that since the well is a statutory oil well, the field rules governing oil wells apply and Gatlin cannot produce Tract 7 from the Holloway No. 1 well bore because these rules limit oil units to no more than 40 acres.

The Railroad Commission and Gatlin argue that Rule 8 applies. They reason that Rule 8 is a special field rule adopted to control the method by which producers outside Lone Star's storage unit can withdraw a designated amount of native gas from a reservoir into which Lone Star has injected gas. Therefore Rule 8 has direct applicability to the situation before this Court and supersedes any rules to the contrary.

We agree with the Commission and Gatlin. The preamble to the Commission's "Special Order No. 5–33,231, Adopting Operating Rules to Govern Gas Storage Operations in the Tri-Cities (Bacon-Lime) and

(Rodessa-Lime) Fields" states that "the Commission finds that the special rules currently in effect for said reservoirs are no longer applicable." Rule 8 itself applies to "any well completed in the Tri-Cities (Bacon-Lime) reservoir." The Commission's order concludes that "Special Order No. 5-11,-718, adopting operating rules for the Tri-Cities Field . . . will remain effective for the Tri-Cities field, but from the effective date of this order shall have no further force nor effect for the fields established by this order." Given the peculiar factual background of this controversy and the specific language of the Commission's order adopting operating rules for the Bacon-Lime reservoir, we conclude that Rule 8 was especially adopted to apply to *any* well that is completed in the Bacon-Lime storage reservoir and that is used to produce the native gas entitlements determined by the Commission in the 1964 hearings. Rule 8 therefore applies in this cause.

The remaining issue is whether Gatlin's proposed unit complies with Rule 8. Lone Star argues that the 119 acre unit is not composed of "continuous and contiguous productive acres" within the language of Rule 8. First, Lone Star reasons that Tract 7 and the tract on which the Holloway No. 1 well bore is located are not "contiguous" because they do not border each other. Second, Lone Star reasons that the Holloway No. 1 tract and the tract lying between the Holloway No. 1 tract and Tract 7 are not "productive acres" because their native gas entitlements have already been produced.

We do not find these arguments persuasive. All three tracts in Gatlin's proposed unit are composed of "productive acres" in the sense that the acreage has been determined to be within the original productive limits of the reservoir. All three tracts are "contiguous" in the sense that Tract 7 borders on the middle tract which in turn borders on the Holloway No. 1 tract. Consequently, we defer to the Commission's finding that Gatlin's proposed unit complies with Rule 8. *See Imperial American Resources Fund, Inc. v. Railroad Commission,* 557 S.W.2d 280 (Tex.1977); *Auto Convoy Co. v. Railroad Commission,* 507 S.W.2d 718 (Tex.1974); *Texarkana & Fort Smith Ry. Co. v. Houston Gas & Fuel Co.,* 121 Tex. 594, 51 S.W.2d 284 (1932).

The Railroad Commission's findings of fact and conclusions of law are sufficient to support the Commission's order granting Gatlin's application. These findings are supported by substantial evidence. Gatlin is therefore entitled to produce Tract 7 from the Holloway No. 1 well bore.

The judgment of the trial court is reversed and the cause is remanded to that court with instruction to render judgment in accordance with this opinion.

GREENHILL, C. J., not sitting.