PUBLIC UTILITY COMMISSION OF
TEXAS, Appellant,

v.

HOUSTON LIGHTING & POWER
COMPANY, Appellee.

No. 13763.

Court of Appeals of Texas,
Austin.

Jan. 18, 1983.

Rehearing Denied Feb. 9, 1983.

Mark White, Atty. Gen., Philip F. Rick-etts, Asst. Atty. Gen., Austin, for appellant.

Cathy Lee Jordan, Baker & Botts, Houston, Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and BRADY, JJ.

EARL W. SMITH, Justice.

This is an appeal from a judgment of the district court of Travis County setting aside a final order of the Public Utility Commission entered on October 20, 1981 (Docket No. 3816). This Court will reverse the judgment of the district court.

The order in Docket No. 3816 was an interpretive order that construed two previously issued Commission orders. The first such order (Docket No. 2676) adopted guidelines governing four categories of operating expenses that Houston Lighting & Power Company, appellee, incurred when purchasing coal from a subsidiary supplier. Subject to these guidelines, those expenses were passed on to appellee's ratepayers. In that general rate case the Commission identified four component elements comprising the total coal-related expenses incurred by the company. A formula for computing each of these charges was adopted by the Commission in its Finding of Fact 19. That finding imposed limitations upon the following four areas:

FINDING OF FACT 19

(a) limitation on *coal charge*

(b) limitation on *handling charge*

(c) limitation on *inventory carrying charge*

(d) limitation on *fixed charge*

Finding of Fact 19(d) adopts a method for computing the maximum "fixed charge" pass through allowable under the company's fuel adjustment clause. The finding specifies the formula to be used in calculating the fixed charge; it also imposes a ceiling beyond which even fixed charge costs, properly calculated under the formula, may not be passed on to appellee's ratepayers. We have set out below the fixed charge limitation in its entirety.[1]

In a hearing on a subsequent rate request (Docket No. 3320), the Commission was faced with objections to the formula adopted for calculating the inventory carrying charge [Finding of Fact 19(c) ] and the limitation imposed upon the fixed charge calculation. In a written order, based upon a stipulation of the parties, the Commission modified the inventory carrying charge formula and adopted the following statement with regard to the fixed charge limitation:

> The fixed charge *limitation* adopted in Docket No. 2676 of $2.602 per ton of coal purchased . . . is to be maintained. . . . (emphasis supplied).

As is obvious, this provision does not refer to nor attempt to change the fixed charge *formula* adopted by the Commission in Docket No. 2676.

Appellee argues that, by failing to refer to the fixed charge *formula,* while expressly maintaining the ceiling *limitation,* the Commission manifested an intent to delete the fixed charge formula. Accordingly, although appellee has been applying the ceiling limitation, it has not been using the Commission's formula to compute the fixed charge. This has resulted in appellee's having passed through and collected in excess of seven million dollars more than that to which it would have been entitled had the formula been used.

Docket No. 3816, the case made the subject of this appeal, was filed by the Commission's General Counsel, who contended that appellee was not in compliance with the order in Docket No. 3320 because of its failure to calculate its fixed charge expenses in the manner expressed in the Commission's *formula.* The Commission concluded that its order in Docket No. 3320 carried forward both the fixed charge ceiling, and the underlying formula of calculation. Specifically, the Commission found that:

> the language in the Stipulation concerning subsection (d) did not modify the fixed charge calculation of Docket No. 2676 but merely reemphasized that the total fixed charge limitation (including the verbal description, the equation, and the proviso) was to be continued.

Thus, the interpretive order in Docket No. 3816 was an expression clarifying what the Commission accomplished in Docket No. 3320. As a result of this interpretation, the Commission determined that appellee had overcollected money from its customers, and it ordered that such excess amounts be refunded to those customers.

Both parties argue that the Commission's order is unambiguous and, upon examination, we agree. The question presented then is, which of the opposite interpretations of this unambiguous order do we find valid?

■ An order of an administrative agency should be considered under the same principles as if it were an act of the Legislature. *Texas Liquor Control Board v. Attic Club, Inc.,* 457 S.W.2d 41 (Tex.1970); *Railroad Commission of Texas v. Houston Natural Gas Corp.,* 155 Tex. 502, 289 S.W.2d 559 (1956). Therefore, if we read the Commission's order as though it were a statute, as we must, we are permitted to take into

---

1. The fixed charge shall be equal to the product of the net asset value (net book value) of existing coal handling facilities and rail cars, less deferred Federal Income Taxes, times 16.07 percent divided by tons of coal burned, provided that the actual fixed charge so calculated shall be passed through the fuel clause only if it is $2.602 per ton or less. If the fixed charge rises above $2.602 per ton, only $2.602 may be passed through the fuel clause to ratepayers.

$$\text{Fixed Charge} = \frac{\begin{array}{c}\text{(Net asset value of coal handling}\\\text{facilities and rail cars less de-}\\\text{ferred Federal Income Taxes)}\end{array} \times 16.07}{\text{tons burned}}$$

Provided: $2.602 = Maximum to be passed through fuel clause

account the circumstances surrounding its enactment. *C.f.,* Tex.Rev.Civ.Stat.Ann. art. 5429b–2, § 3.03(2) (Supp.1982).

The order in Docket No. 3320 was a result of a direct attack upon the fixed charge ceiling limitation of $2.602 per ton and upon the formula for computing the inventory carrying charge. No similar challenge was made against the formula for computing the fixed charge limitation or, for that matter, the formulas for computing the coal charge and the handling charge.

Appellee concedes that both of the latter formulas were brought forward by silence in Docket No. 3320. The obvious reason this is true is because these formulas were not the subject of any dispute in that contested hearing. Equally persuasive logic compels the conclusion that the Commission intended that the effectiveness of the formula for computing the fixed charge limitation, not having been disputed, also was to be carried forward.

We need not rely, however, upon logic or speculation about whether the Commission intended to carry forward the fixed charge formula, for the Commission has clearly and unambiguously expressed its intent in that regard by the issuance of its interpretative order in Docket No. 3816.

■ The Public Utility Regulatory Act empowers the Commission with the authority to make decisions concerning the administration of its rules and orders. Tex.Rev. Civ.Stat.Ann. art. 1446c, § 16 (1980). Moreover, the interpretation officially applied by an administrative agency to its own orders becomes a part of those orders. *Texarkana & Ft. S. Ry. Co. v. Houston Gas & Fuel Co.,* 121 Tex. 594, 51 S.W.2d 284 (1932) [citing *West Texas Compress & Warehouse Co. v. Pan Handle & S.F. Ry. Co.,* 15 S.W.2d 558 (Tex.Com.App.1929, jdgmt adopted)]. In *Texarkana, supra,* the Court explained its reasoning as follows:

> when we come to interpret and construe the rules and rate orders of the commission it is the intent of the commission, fairly expressed in the rule or rate order, which should govern, and when such intent is once ascertained it should be given

effect. Furthermore ... where the commission has officially interpreted its own rules and rate orders, such interpretation should be considered a part thereof.

*See also, A. Leander McAlister Trucking Co. v. State Board of Insurance,* 548 S.W.2d 493 (Tex.Civ.App.1977, writ ref'd n.r.e.); *Lawyers Title Ins. Corporation v. Board of Ins. Com'rs,* 207 S.W.2d 972 (Tex.Civ.App. 1948, writ ref'd n.r.e.).

The Commission by its interpretive order in Docket No. 3816 made clear that it intended to carry forward the formulas for computing the coal charge, the handling charge, and the fixed charge, as well as the fixed charge limitation of $2.602 per ton.

The fact that the Commission expressly continued the $2.602 per ton limitation in Docket No. 3320 resulted from a direct challenge upon the continuing vitality of that limitation. No such challenge was mounted against the three basic formulas [19(a), 19(b), and 19(d)]. Had the Commission intended to abandon any of these formulas, it would have said so expressly in its original order. That the formulas were not abandoned is evidenced by the plain language of the Commission's interpretative order in Docket No. 3816.

■ We hold that the Commission's interpretative order in Docket No. 3816, under the above-cited authorities, became a part of the two previous orders in Docket Nos. 2676 and 3320. An examination of those orders in this light reveals that the fixed charge formula and its $2.602 per ton ceiling described in Docket No. 2676 was carried forward by the Commission's order in Docket No. 3320. The only relevant change made by the order in Docket No. 3320 was with respect to Finding of Fact 19(c)—dealing with the inventory carrying charge. Under the Commission order issued in Docket No. 2676, as carried forward in Docket No. 3320, appellee has been bound and is bound to compute its coal charge, handling charge, and fixed charge based upon the formula adopted in each instance.

Accordingly, we reverse the judgment and remand the cause to the district court

with instructions that he reinstate the order of the Commission in Docket No. 3816.