RRC v. Acme Truck Line 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-473-CV





RAILROAD COMMISSION OF TEXAS, ET AL.,



 APPELLANTS


vs.





ACME TRUCK LINE, INC., ET AL.,



 APPELLEES


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 494,794, HONORABLE JERRY DELLANA, JUDGE



 





PER CURIAM


 This appeal arises from the district court's review of an agency order. Appellees,
Acme Truck Line, Inc., and numerous trucking companies, petitioned the court for judicial review
of an order of appellant Railroad Commission of Texas. (1) See Tex. Rev. Civ. Stat. Ann. art.
911b, § 20 (West 1964); art. 6252-13a, § 19 (West Supp. 1992). Five trucking companies
intervened in support of the Commission. From the trial court's judgment reversing the order of
the Commission and setting it aside, the Commission and four of the intervenors appeal. (2)

 The Commission issued the order in dispute to interpret a specialized motor carrier
certificate known as the Bewick Record certificate. This certificate, which the Commission issued
in 1970, granted authority to transport,



(1)(a) Articles of iron, steel and other metals or materials, individually or in 
 bales or bundles, viz:


 Plates; Posts; Angles; Forms; Sheets; Rounds; Channels; Beams;
Ingots; Piling; Billets; Blooms; Reinforcing Rods; Bars or Flats;
Wire Mesh; Pipe; Tubing; Wire Rod; Slab; Skelp; Cattle Guards;
Conduit; Forgings; Guard Rails; Scaffolding and Scrap Metal
(including crushed, mashed or flattened motor vehicles).


 (b) Concrete Products, prestressed or reinforced.


. . . .


(2) Aircraft; Aircraft Engines; Aircraft Fuselages; Aircraft Service Trucks; Balls, 
 crushing or grinding; Bins; Blasting Sand in Sacks; Blowers; Coils; Culverts; 
 Feeders, Livestock; Filters and Filter Elements; Grease Racks; Harvesters; 
 Muffler Stacks; Pier Tubing; Poles, Power; Rotor Blades; Scales; Spreaders 
 or Applicators; Sprinkler Systems; Street Sweepers; Steel Strand, in rolls or 
on reels; subject to the following restriction:


. . . .


The items in these two paragraphs were limited to (1) those above a certain weight when moving
in the city service area of the "regular-route common carriers" and (2) those requiring special
equipment to load and transport. 

 In 1989, the Commission gave notice that it was initiating a declaratory-order
proceeding to interpret the authority granted in the Bewick Record certificate. The Commission
stated in the notice that it intended to determine the breadth of the term "materials" in the phrase
"articles of iron, steel and other metals or materials." It noted that a broad construction of the
term might encompass such commodities as gypsum wallboard, wood paneling, and formica,
among others.

 The Commission conducted a hearing and in 1990 issued an order in which it
concluded that the phrase "articles of iron, steel and other metals or materials" in paragraph 1(a)
unambiguously refers to the listed articles made of materials other than iron, steel, or other
metals. The Commission accordingly ordered that the authority granted in the Bewick certificate
be interpreted to include the transportation of sheets of gypsum wallboard, hardboard, or
plywood, and that the authority not be limited to articles constructed, in whole or substantial part,
of iron, steel, or other metals.

 On review of this order in the district court, the court concluded that in granting
the Bewick Record certificate in 1970, the Commission at that time intended to authorize
transportation of the specifically named articles in paragraph 1(a) only when made in whole or in
substantial part of iron, steel, or other metals. The Commission brings a single point of error in
this Court asserting that the district court's interpretation of the Bewick certificate of authority is
erroneous as a matter of law. The four appellant intervenors bring additional points of error,
which we will resolve in considering the Commission's point.

 The Commission may, for administrative purposes, interpret its certificates, though
it may not use the occasion of interpreting to amend a certificate. Railroad Comm'n v. Home
Transp. Co., 670 S.W.2d 319, 323, 25 (Tex. App.--Austin 1984, no writ). When an agency
officially interprets its own order, its interpretation becomes a part of the original order. 
Texarkana & Ft. S. Ry. v. Houston Gas & Fuel Co., 51 S.W.2d 284, 287 (Tex. 1932); Public
Util. Comm'n v. Houston Lighting & Power Co., 645 S.W.2d 645, 647 (Tex. App.--Austin 1983,
writ ref'd n.r.e.). Thus, the Commission's 1990 order interpreting the Bewick Record certificate
became part of the original 1970 order granting the Bewick authority. 

 A court may review the Commission's interpretation of its previous order. Home
Transp. Co., 670 S.W.2d at 323; e.g., Houston Lighting & Power Co., 645 S.W.2d at 647. 
Judicial review of the validity of an interpretive order involves examining the original order, of
which it is a part. Home Transp. Co., 670 S.W.2d at 325; Houston Lighting & Power Co., 645
S.W.2d at 647. The intent of the Commission in granting a certificate is a question of law, and
that intent is ascertained by the same rules that apply to statutes. State v. Bilbo, 392 S.W.2d 121,
122 (Tex. 1965); Home Transp. Co., 670 S.W.2d at 325. A court is not bound by an
administrative determination of a question of law. Brown v. Humble Oil & Refining Co., 83
S.W.2d 935, 943 (Tex. 1935); City of Dallas v. Furrh, 541 S.W.2d 271 (Tex. Civ.
App.--Texarkana 1976, writ ref'd n.r.e.). The question on judicial review of the Commission's
interpretation of the Bewick certificate is whether that interpretation is legally correct. Pension
Bd. of the Police Officers Pension Sys. v. Colson, 492 S.W.2d 307, 308-09 (Tex. Civ.
App.--Beaumont 1973, writ ref'd n.r.e.).

 In determining the meaning of an order granting a certificate, this Court can
consider both the order that gave rise to the certificate and the application that gave rise to the
order. Home Transp. Co., 670 S.W.2d at 325; Houston Lighting & Power Co., 645 S.W.2d at
647; see State v. Bilbo, 392 S.W.2d 121, 122 (Tex. 1965). The Bewick certificate and certain
applications are part of the agency record filed in the district court and, thereafter, in this Court. 
See Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19(d) (West Supp. 1992). When the Commission
issued the order granting the Bewick Record certificate of authority, it expressly adopted the
hearings examiner's report and made it a part of the order. We will therefore consider the
examiner's report in determining the intent of the Commission in its 1970 order. E.g., Home
Transp. Co., 670 S.W.2d at 325.

 The applications and order in the Bewick proceeding disclose that in 1969, one
hundred fifty-one specialized motor carriers requested the Commission to amend their current
certificates to add "size and weight" authority. This authority would allow them to carry oversize
and heavy items that required special equipment to load and transport. See Tex. Rev. Civ. Stat.
Ann. art. 911b, § 1(i) (West 1964). The majority of the applicants sought authority to transport
"heavy machinery, industrial and manufacturing equipment, materials and supplies and other
commodities, all of which by reason of length, width, height or size, require the use of special
devices, facilities, or equipment for their loading, unloading, and/or transportation." The
applicants already had authority to carry oilfield equipment, and most were equipped to carry the
additional heavy and bulky items requested. 

 The record before the Commission in its declaratory-order proceeding contains the
exhibits to the applications explaining the need for the proposed service for only two of the
applicants. One of these exhibits is in the application of Bewick Trucking Co., Inc., whose name
was eventually given to the proceeding; the other exhibit is in the application of Melton Truck
Lines, Inc. The hearing on the applications was consolidated, according to the examiner's report,
because all applications involved common questions of law and fact. While perhaps not identical
to the rest, the applications of Melton and Bewick can at least be considered representative of the
whole.

 To justify their request for authority, Bewick and Melton submitted exactly the
same exhibit in their applications. In it, they cited the recent appearance in Texas of companies
engaging in basic industry. They named as examples four steel companies, which operated plants
in Texas and which had produced, along with other companies, an intrastate commerce in heavy,
basic iron and steel items and a related commerce in fabricated and manufactured items. To
illustrate the development of Texas' basic industry, the applicants presented survey results of the
value in 1966 of shipments in four heavy industrial categories: primary metal industries,
fabricated metal products, non-electrical machinery, and electrical machinery. The applicants
asserted that Texas industry had a critical need for their services under a broad, heavy hauling
authority.

 After consolidating the one hundred fifty-one applications into a single proceeding,
the Commission ordered the companies to specify the commodities they sought to transport. The
companies then amended their applications to request authority to carry,



Iron, Steel and other articles, individually or in bales or bundles, viz;


 Plates; Posts; Angles; Forms; Sheets; Rounds; Channels; Beams;
Ingots; Pilings; Billets; Blooms; Reinforcing Rods; Bars; Wire
Mesh; Pipe; Tubing; Wire Rod; Slab; Skelp; Cattle Guards;
Concrete Products, prestressed or reinforced; Concrete Blocks;
Conduit; Forgings; Guard Rails; Scaffolding and Scrap Iron, subject
to the following restriction: . . .




The applicants included a second paragraph listing other items such as aircraft, aircraft service
trucks, harvesters, and sprinkler systems. The items in these two paragraphs were limited by size
and weight. 

 The companies' amendment eliminated protest to all the items requested except
concrete blocks, and when the Commission heard testimony on the applications in January 1970,
the companies deleted concrete blocks from the applications. With this amendment, the
applications became unopposed. 

 In his report and proposed order, the hearings examiner summarizes the public
testimony given in support of the applications. The order in which he sets out the testimony
largely conforms to the order of the commodities in the description. He begins by stating that the
applications were supported by numerous iron and steel manufacturers, distributors, importers,
and fabricators, and that each of these companies distributed some or all of the iron and steel
articles listed in paragraph one. The examiner mentions that some of these companies also needed
to transport tinplate, terne plate, and black plate, items not entirely made of iron or steel. (3) He
further mentions that a metal company supported the movement of items in paragraph one made
of both ferrous and nonferrous metals. 

 After noting that several companies supported transporting reinforced concrete
products, the examiner lists companies needing specific commodities from the second paragraph
transported. Interspersed with these items are several items from the first paragraph: forgings;
guard rails; post, pipe, and tubing; crushed motor vehicles; and cattleguards. The examiner also
reports that the 249-member Associated General Contractors, Texas Highway--Heavy Branch,
supported all the commodities involved except livestock feeders, street sweepers, and harvesters. 
The members of this association did contracting work on bridges, dams, airports, parking lots,
and plants, but did not erect residences and buildings.

 The examiner states that during the hearing, the applicants jointly amended several
items, such as "bars," which was expanded to "bars or flats" after supporting steel companies
testified that iron or steel bars were often known as "flats." 

 The hearings examiner also sets out his proposal for one further change to the
commodity description. He notes that two steel companies and a metal products company were
concerned whether the description "iron, steel, and other articles" would include plates, posts, and
other items made of "metals other than iron or steel." To clarify the grant of authority in
paragraph one, the examiner concluded that the item description should read:



(1)(a) Articles of iron, steel and other metals or materials, individually or in bales
or bundles, viz:


 Plates; Posts; Angles; Forms; Sheets; Rounds; Channels; Beams; Ingots;
Piling; Billets; Blooms; Reinforcing Rods; Bars or Flats; Wire Mesh; Pipe; 
Tubing; Wire Rod; Slab; Skelp; Cattle Guards; Conduit; Forgings; 
Scaffolding and Scrap Metal (including crushed, mashed or flattened motor
vehicles).


 (b) Concrete Products, prestressed or reinforced.



The examiner states that public support given to the applicants seeking to transport the specifically
named items made of "material other than iron and steel" justified the change. 

 The examiner found that existing transportation services were inadequate and that
a public need existed to transport the requested commodities; he recommended that the
applications be granted. In March 1970, the Commission ordered the applications granted and
adopted the examiner's report as part of its order. 

 Examining the applications and order, it appears that the applicants, the examiner,
and the companies supporting the applications thought of the items in paragraph 1(a) as made of
metal. The applicants in the Bewick proceeding sought authority to transport items that were
cumbersome or heavy. The Bewick and Melton applications specifically identified the recent
development of Texas' basic iron and steel industry and concurrent commerce in heavy iron and
steel items as the impetus behind the application. The need to transport "heavy materials,
machinery, equipment, and other commodities which require special equipment" was presented
as growing out of the recent addition of basic industrial commodities to Texas' commerce. 
Though all the applications are not in the record the Commission examined when it interpreted
the Bewick certificate, the Commission had to consider that it could not have granted the Bewick
certificate unless the applicants had specified in their applications the reason additional service was
needed for the commodities they sought to transport. Act of May 19, 1941, 47th Leg., R.S., ch.
442, § 3, 1941 Tex. Gen. Laws 713, 716-17 (Tex. Rev. Civ. Stat. Ann. art. 911b, § 5a(c), since
amended).

 The examiner characterizes the items listed in paragraph one as "iron or steel
articles," and he mentions only the numerous iron and steel manufacturers as supporting the
transportation of this group of articles. Here, the examiner also refers to the steel companies that
move three kinds of metal plate not entirely made of iron or steel. 

 The examiner reports no testimony that supports the transportation of gypsum
wallboard, wood paneling, or formica. While much testimony is recorded from companies
engaged in heavy industry, none appears from any representative of the lumber or general building
industry. Notably, only the Texas Highway division of the Associated General Contractors
testified; this group did not erect residences and buildings. The testimony of the public witnesses
thus does not support a broad construction of the Commission's grant of authority. Without a
showing that the service was needed and that it would promote public convenience, the
Commission could not issue the amended specialized motor carrier certificate. Act of May 19,
1941, 47th Leg., R.S., ch. 442, Sec. 4, § 5a(d), 1941 Tex. Gen. Laws 713, 717 (Tex. Rev. Civ.
Stat. Ann. art. 911b, § 5a(d), since amended). Further, the Commission was required to set forth
in its order "full and complete findings of fact pointing out in detail the inadequacies of the
services and facilities of the existing carriers and the public need" for the service it authorized. 
Id. The examiner bases his findings of inadequacy and public need on his summary and
discussion of the public testimony. His summary and discussion do not mention support for
transporting gypsum wallboard, wood paneling, or formica. 

 The examiner explains that he proposed to replace the phrase "iron, steel and other
articles" with "articles of iron, steel and other metals or materials" to address the concerns of two
steel companies and a metal products company that the original description did not include items
in paragraph one made of "metals" other than iron and steel. The examiner made the change in
view of the public support for transporting the specifically named items made of "material" other
than iron and steel. The examiner, however, does not record any public testimony supporting
paragraph-one items made specifically of non-metallic materials. 

 When the examiner amended the commodity description, he also divided paragraph
one into two parts. The examiner separated the item "concrete products, prestressed or
reinforced" from the other items in paragraph one and made it part (b), leaving the remaining
paragraph-one items in part (a). The creation of a separate division for concrete products is
consistent with an intent to limit items in part 1(a) to those made of metal. If "materials" in the
commodity description covered more than metal-based items, there would be no reason to move
concrete products into its own category. Again, the examiner meant the new commodity
description to clarify the authority granted for transporting items in paragraph one given the
companies' doubts that "iron, steel and other articles" covered metallic items not made of iron or
steel.

 The caption of the Commission's order granting the Bewick certificate reads,
"Application of Bewick Trucking Co., Inc., et al, Docket no. 5192, et al, to amend specialized
motor carrier certificates so as to authorize the transportation of iron and steel articles and named
size and weight commodities." We may consider this caption in seeking the Commission's intent
in making the order. Texarkana & Ft. S. Ry. Co., 51 S.W.2d at 287-288. The caption is
designed to specify the subject matter under consideration as succinctly as possible. Id. at 288. 
The two groups of items in the caption, iron and steel articles and named size and weight
commodities, logically correspond to the items grouped into paragraph one and paragraph two of
the commodity description. The caption lends support to a determination that the Commission
intended the articles in paragraph one to be made of metal. 

 Together the applications, the order, and the examiner's report incorporated by the
order show that the commodities before the Commission for consideration under paragraph 1(a)
were metallic. Given that the Commission could not grant transportation authority beyond the
scope of the applications and the showing of public need, we determine that the Commission
intended the phrase "articles of iron, steel and other metals or materials" to cover items made
wholly or substantially of metal.

 The Commission's manifestation of intent is supported by the principle that the
meaning of a word in a sentence may be ascertained by referring to the meaning of words
associated with it. Bear Bros. & Hirsch v. Marx & Kempner, 53 Tex. 298, 301 (1885). When
general and specific words are associated together in a statute, the general words are read to refer
to the subject matter that was in the mind of the legislature and are strictly limited to it; the
specific words thus qualify the general words. Gulf Ins. Co. v. James, 185 S.W.2d 966, 969
(Tex. 1945); Stanford v. Butler, 181 S.W.2d 269, 272 (Tex. 1944). One court has said that in
interpreting statutes, the coupling of words ordinarily denotes an intention that they be understood
in the same general sense. See Department of Health v. Sol Schnoll Dressed Poultry Co., 245
A.2d 532, 535 (N.J. 1968). "Materials," being coupled with "metals" by the conjunction "or,"
could sensibly be understood to mean articles at least partly made of metal. Thus, the phrase
"articles of iron, steel and other metals or materials" as a whole describes a category of articles
unified by their metallic content. E.g., Farmers' & Mechanics' Nat'l Bank v. Hanks, 137 S.W.
1120, 1123-24 (Tex. 1911). We overrule the Commission's point of error and all points asserted
by the appellant intervenors. 

 The district court correctly concluded that paragraph 1(a) of the Bewick Record
certificate authorized transportation of the named articles only when made in whole or substantial
part of iron, steel, or other metals. We therefore conclude that the district court was correct in
reversing the Commission's order. Having reversed the Commission's order, the proper judgment
was one remanding the case to the Commission for further proceedings. Tex. Rev. Civ. Stat.
Ann. art. 6252-13a, § 19(e) (West Supp. 1992); Texas State Bd. of Pharmacy v. Seely, 764
S.W.2d 806, 815 (Tex. App.--Austin 1988, writ denied). Accordingly, we modify the district-court judgment to order that the cause be remanded to the Railroad Commission for further
proceedings consistent with this opinion and the judgment of the trial court. As so modified, the
judgment is affirmed. 


[Before Justices Powers, Aboussie and B. A. Smith]

Modified and, as Modified, Affirmed

Filed: November 18, 1992

[Do Not Publish]
1. The companies who petitioned the district court, in addition to Acme Truck Line, Inc., are
Bilbo Freight Lines, Inc.; Bilbo Transports, Inc.; G. P. Bourrous Trucking Company, Inc.;
Building Materials Carriers Bureau, Inc.; Central Freight Lines Inc.; Gypsum Transport, Inc.;
E. A. Holder, Inc.; Melton Truck Lines, Inc.; Merchants Fast Motor Lines, Inc.; McWaters
Trucking, Inc.; Mid-Way Transportation, Inc.; Oil Transport Company; Southern Gulf Trucking,
Inc.; and Berwyn Walker, Inc.
2. The five companies who intervened in the trial court are K Truck Lines, Inc.; Big Mac
Trucking Company; Blaschke Trucking Company; B.N.M., Inc.; and A. Leander McAlister
Trucking Co. All intervenors except K Truck Lines, Inc., are before this Court on appeal.
3. "Tinplate" refers to thin iron or steel sheet coated with tin; "terne plate" means steel plate
coated with an alloy of lead and tin; and "black plate" means either cold-rolled sheet steel before
cleaning or sheet steel coated with a lacquer or enamel. The Random House Dictionary of the
English Language 1986, 1959, 218 (2d ed. unabridged 1987).