SWB 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-609-CV





SOUTHWESTERN BELL TELEPHONE COMPANY,



 APPELLANT


vs.





PUBLIC UTILITY COMMISSION, AT&T COMMUNICATIONS OF THE SOUTHWEST,


INC., AND MCI TELECOMMUNICATIONS CORP.,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT



NO. 92-08035, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 



 The Texas Legislature passed a tax bill that increased the franchise taxes for
Southwestern Bell Telephone Company ("Southwestern Bell"). In order to recoup the resulting
tax expense and pursuant to a legislative statute, Southwestern Bell petitioned the Public Utility
Commission (the "Commission") to approve the imposition of a franchise tax pass-through to its
customer-ratepayers. Based on the interpretation of an earlier agreement by Southwestern Bell
imposing a rate freeze, the Commission denied Southwestern Bell's request. The district court
affirmed the Commission's order, and this appeal ensued. We will affirm the judgment of the
district court.


BACKGROUND AND PROCEDURAL HISTORY


The Tax Legislation

 In 1991, the Texas Legislature passed House Bill 11 (1) ("H.B. 11"), a comprehensive
tax bill that increased franchise and other taxes for most corporations. Typically, to recover the
costs associated with such taxes, a regulated public utility like Southwestern Bell must institute
a rate case before the Commission. However, concurrently with the enactment of H.B. 11, the
legislature amended section 43(j) of the Public Utility Regulatory Act ("PURA"), Tex. Rev. Civ.
Stat. Ann. art. 1446c, § 43(j) (West Supp. 1993), to provide a temporary mechanism for a utility
to seek recovery of its increased tax costs until its next rate case. (2) Section 43(j) of PURA, as
amended by the legislature, provides:



The commission on its own motion or on the petition of a utility shall provide for
the adjustment of a utility's billing to reflect any increase or decrease of tax
liability of the utility to the state resulting from [H.B. 11] and that is attributable
to activities that are subject to the jurisdiction of the commission. Any adjustment
to billings under this section must be apportioned prorata to all types and classes
of service provided by the utility and is effective only until the commission alters
the adjustment as provided by this subsection or enters an order for the utility
under this section or Section 42 of this Act. The adjustment of billings must be
made effective at the same time as the increase or decrease of tax liability resulting
from [H.B. 11] or as soon after as is reasonably practical. Each year after any
original adjustment, the commission shall review the utility's increase or decrease
of tax liability resulting from [H.B. 11] and alter the adjustment to reflect the
increase or decrease. A proceeding under this subsection is not a rate case under
this section.


PURA § 43(j). Pursuant to this section, Southwestern Bell petitioned the Commission to impose
the franchise tax pass-through on its customers.

The Rate Freeze Agreement

 In 1989, the Commission initiated a rate case involving the reasonableness of
Southwestern Bell's rates and services, designated as docket number 8585. Before the date set
for the cost-of-service hearing, Southwestern Bell, the Commission, and twenty-four other parties
entered into a non-unanimous settlement stipulation ("NUS"). (3) Of particular importance to the
present appeal, Southwestern Bell in the NUS agreed not to seek an increase in its tariff rates for
a four-year period. (4)

 After the hearing on the NUS, the Commission, in its final order, adopted the NUS (5)
with some minor modifications. Those parties that continued their opposition to the NUS sought
judicial review of the Commission's order in district court pursuant to section 69 of PURA, Tex.
Rev. Civ. Stat. Ann. art. 1446c, § 69 (West Supp. 1993), and section 19 of the Administrative
Procedure and Texas Register Act ("APTRA"), Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 19
(West Supp. 1993). The trial court affirmed the final order of the Commission adopting the NUS. 
On appeal, this Court affirmed the Commission's order in substantial part and, in particular,
affirmed that portion of the trial court's judgment approving the NUS. (6)

The Commission Rule 

 In order to implement the billing adjustments of section 43(j) of PURA, the
Commission promulgated an amendment to its Substantive Rule 23.21 by adding subsection (d)
that provides in part:



If a utility chooses not to request an increase under this subsection or if the utility
has otherwise limited itself by agreement to recovering tax changes that are the
subject of this subsection by a method different from that prescribed in this
subsection, the utility need not file tariff sheets but shall make an informational
filing showing its calculations including an explanation and all underlying
supporting documentation showing the effect of H.B. 11 on its taxes.

16 Tex. Admin. Code § 23.21(d) (1993) (emphasis added).

 The Commission in its commentary to the amended rule specifically addressed the
issue regarding those utilities which had entered into rate-freeze agreements:



If a utility has agreed to a rate freeze or similar restriction, the parties agreeing to
the stipulation have already in some manner allocated the risk of changing tax
laws. The utility has accepted the risk of increasing taxes; the signing ratepayers
have accepted the risk of decreasing taxes. In deference to standard means of
changing rates and the agreement of the parties, the commission should not by rule
move to adjust the utility's bills to decrease rates. Likewise, the commission
assumes that the utilities will be willing to honor their previous agreements. The
language [of the rule] has been changed so that utilities that have an agreement
concerning changes in cost of service will not be required to implement the change.


17 Tex. Reg. 110, 111 (1992).

The Commission Hearing

 Pursuant to section 43(j) of PURA, Southwestern Bell petitioned to recover the tax
increase imposed by H.B. 11 by filing with the Commission tariff sheets that set forth the
distribution of the tax increases among all of its rate classes. The Commission styled
Southwestern Bell's application as docket number 10821 and assigned it to an Administrative Law
Judge ("ALJ").

 AT&T Communications of the Southwest, Inc. ("AT&T"); MCI
Telecommunications Corp.; Capital Network Systems, Inc.; the Texas Association of Telephone
Answering Services; the Commission's General Counsel; and the Office of Public Utility Counsel
were admitted as parties to docket number 10821. AT&T filed a motion to suspend Southwestern
Bell's petition. By an order dated April 21, 1992, the ALJ granted AT&T's motion and ordered
Southwestern Bell not to implement its requested tax pass-through pursuant to H.B. 11. The ALJ
found that granting Southwestern Bell's proposed tax pass-through would violate the rate freeze
contained in the NUS to which Southwestern Bell had previously agreed. Specifically, the ALJ
stated, "[The NUS] prohibits [Southwestern Bell] from proposing any increase in rates or
collection of rates for the services listed therein. [Southwestern Bell] assumed the risk of changes
in its cost of service down to a 10.49 percent rate of return." The ALJ found that H.B. 11 did
not require that a utility automatically pass the burden of the taxes on to its customers. The ALJ
further found that rule 23.21(d) limits the ability of a utility that is subject to a rate freeze to
impose a tax pass-through on its customers in order to recoup the tax increase imposed by the
impact of H.B. 11. 

 Southwestern Bell appealed the ALJ's order to the Commission. By refusing to
hear the appeal and Southwestern Bell's motion for rehearing, the Commission affirmed and
adopted the order of the ALJ. Southwestern Bell then brought a suit for judicial review in district
court of the Commission's action. In its final judgment, the trial court affirmed the decision of
the Commission. Southwestern Bell appeals the judgment of the trial court.

Points of Error

 By two points of error, Southwestern Bell attacks the Commission's order and the
trial court's final judgment of affirmance. Southwestern Bell makes two main arguments for its
position. First, Southwestern Bell contends that the billing adjustment provided by section 43(j)
is a tax and not a rate, and therefore, its prior agreement to freeze rates for four years does not
bar it from imposing the adjustment on its customers. Second, Southwestern Bell contends that
the tax pass-through is mandatory and not permissive and that the Commission erred in denying
Southwestern Bell's application because it is entitled to the billing adjustment as a matter of
legislative mandate.



DISCUSSION


 Resolution of the issues presented upon this appeal requires statutory interpretation
of the salient legislative enactments, i.e., H.B. 11 and PURA section 43(j), as well as construction
of the applicable Commission rules, regulations, and orders. The cardinal rule of statutory
interpretation is to effectuate the intent of the legislature. City of Sherman v. Public Util.
Comm'n, 643 S.W.2d 681, 684 (Tex. 1983). This intent is obtained from the language of the
statute itself. Id. "In arriving at the intent and purpose of the law, it is proper to consider the
history of the subject-matter involved, the end to be attained, the mischief to be remedied, and the
purposes to be accomplished." Id. (quoting Magnolia Petroleum Co. v. Walker, 83 S.W.2d 929,
934 (Tex. 1935)). Furthermore, the contemporaneous construction of a statute by the agency
charged with its enforcement is entitled to great weight as long as the construction is reasonable
and does not conflict with the plain language of the statute, especially where the statute is
ambiguous. Texas Ass'n of Long Distance Tel. Cos. v. Public Util. Comm'n, 798 S.W.2d 875,
884 (Tex. App.--Austin 1990, writ denied); see also Tex. Gov't Code Ann. § 311.023(6) (West
1988).

 In its first argument, Southwestern Bell maintains that the legislature's inclusion
of the term "adjustment to billing" in section 43(j) demonstrates that the tax pass-through was to
be considered a tax and not a rate. To support this proposition, Southwestern Bell relies on the
last sentence of section 43(j) of PURA: "A proceeding under this subsection is not a rate case
under this section." Southwestern Bell contends that because a section 43(j) proceeding is not a
rate case, no rate can result from such a proceeding. In sum, Southwestern Bell argues that the
Commission erred in its determination that the proposed tax pass-through violated the terms of
Southwestern Bell's rate-freeze agreement.

 Traditionally, tax expenses, as operating expenses, have been passed along to a
utility's customers through the rate-setting mechanism. See Public Util. Comm'n v. Houston
Lighting & Power Co., 748 S.W.2d 439 (Tex. 1987). When the legislature passed H.B. 11,
which resulted in an increase in taxes for some corporations, it provided in section 43(j) of PURA
a temporary mechanism for regulated utilities to recoup this increased tax burden from its
customers. Acknowledging that a contested rate case is an expensive and time-consuming process,
we believe that the legislative intent in the following language, "[a] proceeding under this
subsection is not a rate case under this section," was included simply to ensure that this temporary
pass-through mechanism would not be subjected to all of the procedural complexities provided for
a full-blown, contested rate case. Therefore, we do not agree that the above-quoted legislative
language establishes conclusively that the "billing adjustment" is not a "rate increase." However,
on the other side of the semantical fence, nothing in the statute suggests affirmatively that the tax
pass-through contemplated by the statute is the equivalent of a "rate increase" either. In the final
analysis, we conclude that it makes little difference whether the adjustment is labeled a tax or a
rate. The critical inquiry is this: Does the effect of the tax pass-through result in an increase in
tariff rates to Southwestern Bell's customers which is in violation of Southwestern Bell's
agreement to freeze rates for a full four years? The Commission answered this question in the
affirmative. The district court affirmed the Commission's answer in this regard. We agree with
the Commission and will affirm the district court.

 The NUS agreement entered into by Southwestern Bell and the other entities
provided in pertinent part as follows:



Southwestern Bell agrees, except as permitted by paragraphs 8, 17 and 19
herein[ (7)], not to propose any increase in its local exchange, Service Connection
Charges, Direct Inward Dialing (DID), Direct Outward Dialing (DOD), toll
(MTS), WATS, 800 Service, Touch-tone, or Access Service tariff rates for four
years from the date of Commission approval. For purposes of this Agreement,
local exchange will include those services set forth in Attachment 1. Additionally,
Southwestern Bell agrees, during the term of this Stipulation and Agreement, not
to propose or seek to implement a state (intrastate) and user common line charge
in the nature of the subscriber line charge imposed by the Federal Communications
Commission.


(Emphasis added).

 In making application for the H.B. 11 tax pass-through adjustment, Southwestern
Bell filed with the Commission amended tariff rate sheets which proposed to recoup the increased
taxes from Southwestern Bell's customers. The Commission, after applying its rules and
regulations and construing Southwestern Bell's prior agreement to freeze rates, concluded that
Southwestern Bell's amended tariffs violated the terms of the rate freeze. (8) We recognize that the
Commission is in the best position to evaluate the NUS rate freeze and its impact on the franchise
tax pass-through. See Public Util. Comm'n v. Houston Lighting & Power Co., 645 S.W.2d 645,
646 (Tex. App.--Austin 1986, ref'd n.r.e.) (order of administrative agency should be considered
under same principles as if it were act of legislature); see also Texas Liquor Control Bd. v. Attic
Club, Inc., 457 S.W.2d 41 (Tex. 1970). Furthermore, we give due deference to an agency's
construction of a statute that the agency is charged with enforcing. Texas Ass'n of Long Distance
Tel. Cos., 798 S.W.2d at 884; see also Tex. Gov't Code Ann. § 311.023(6) (West 1988).

 Whether the billing adjustment is designated a tax or a rate, we defer to and uphold
the Commission in its determination that, under the facts of this case and Southwestern Bell's
prior NUS agreement to freeze rates, the H.B. 11 billing adjustment was prohibited. We reject
Southwestern Bell's first argument.

 We next address Southwestern Bell's second argument: that the trial court erred
in interpreting the language of section 43(j) of PURA as mandatory and not permissive. 
Southwestern Bell relies on the first sentence of section 43(j) that provides that "the commission
on its own motion or on the petition of a utility shall provide for the adjustment of a utility's
billing to reflect" the effect of tax changes imposed by H.B. 11. However, the clear language of
the statute does not require that the utility file such a petition or mandate that the Commission
make such a motion.

 The language of section 43(j) of PURA anticipates that for some regulated utilities
H.B. 11 will result in a tax increase while for others a decrease in tax liability will occur. Since
the Commission is charged with protecting the public's interest in the rates and services of public
utilities, PURA § 2, Tex. Rev. Civ. Stat. Ann. art. 1446c, § 2 (West Supp. 1993), we believe that
the legislative language authorizing the Commission to initiate the tax pass-through on its own
motion was designed to protect the ratepaying public from situations in which H.B. 11 would in
actuality result in a "billing adjustment" decrease and a recalcitrant utility would be unwilling
voluntarily to pass the decrease on to its customers. We agree with Southwestern Bell that the
statute is mandatory in the sense that if a utility is entitled to apply for the pass-through, the
Commission has no discretion but to grant the request. However, we reject Southwestern Bell's
argument to the extent that it precludes the Commission from enforcing the previously approved
NUS agreement, to which Southwestern Bell voluntarily agreed.

 Accordingly, we conclude that the commencement of a section 43(j) proceeding,
whether it be on a utility's petition or the Commission's own motion, is discretionary. We do not
construe the statute as depriving the Commission of its authority to enforce its own orders. We
reject Southwestern Bell's second argument and overrule both its points of error.



CONCLUSION


 Finding no error, we affirm the district court's judgment affirming the order of the
Commission.



 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: September 15, 1993

Publish
1. Act of Aug. 22, 1991, 72d Leg., 1st C.S., ch. 5, 1991 Tex. Gen. Laws 134.
2. Unregulated businesses may independently adjust the prices they charge to their
consumers in response to the enactment of H.B. 11; section 43(j) of PURA allows state-regulated utilities, like these unregulated companies, to immediately recover their new tax
expenses.
3. The Office of Public Utility Counsel, the City of McKinney, a group of one hundred
fourteen Texas cities, and several other intervenors opposed adoption of the NUS.
4. The rate freeze was not absolute. If Southwestern Bell's rate of return dropped below a
certain percentage or if unusual events impaired its financial integrity, Southwestern Bell could
petition the Commission for an increase in rates.
5. The NUS provided, in part, for (1) a one-time credit to residential customers, (2) rate
reductions of approximately $73 million annually, and (3) upgrades in Southwestern Bell
services and facilities. The NUS also established a unique "earnings sharing" plan in which
Southwestern Bell would return to customers a percentage of earnings.
6. This Court concluded that the Commission's order was predominantly correct, but held
that the Commission did not correctly apply the law as to income-tax savings resulting from
expenses disallowed for ratemaking purposes. Cities of Abilene v. Public Util. Comm'n, 854
S.W.2d 932, 943-45 (Tex. App.--Austin 1993, writ requested).

7. Southwestern Bell concedes that the exceptions to the rate cap provided in paragraphs 8,
17 and 19 are inapplicable to the present appeal. We agree and do not find it necessary to
discuss them in the disposition of this appeal.
8. Evidence from the record supports the Commission's determination that Southwestern
Bell assumed the risk of increased taxes in the NUS agreement. During the docket 8585
hearing, Thomas Barry, Southwestern Bell's Vice President of Revenues and Public Affairs,
testified that the NUS barred Southwestern Bell from proposing any rate increases. In
particular, Barry stated:


We are bearing the entire risk down to a floor of 10.49 return on
investment. The [NUS] recognizes that at that point in time, the
Company may propose an increase, but all risks down to 10.49 is [sic]
absolutely borne by the Company.